OPTICAL WORKERS' UNION LOCAL 24859 et al., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 15460.

United States Court of Appeals
Fifth Circuit.

Dec. 13, 1955.

L. N. D. Wells, Jr., Mullinax & Wells, Dallas, Tex., Quentin Keith, Beaumont, Tex., for petitioners.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Atty., N. L. R. B., Washington, D. C., Theophil C. Kammholz, Gen. Counsel, N. L. R. B., Chicago, Ill., David P. Findling, Associate Gen. Counsel, N. L. R. B., Washington, D. C., Irving M. Herman, Atty., N. L. R. B., New York City, for respondent.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

Local 24859, Optical Workers Union, AFL, and thirty-four members thereof here seek review [1] of a National Labor Relations Board order dismissing the union's petition for certification as bargaining agent for the employees of Rogers Brothers Wholesalers, a Texas partnership, and a complaint issued against the partnership for unfair labor practices. The dismissal was pursuant to the Board's policy, announced June 30, 1954,[2] whereby it will not hear cases falling within its statutory jurisdiction over labor disputes "affecting commerce," [3] if the nature or volume of the business of the employer involved do not meet certain admittedly more stringent requirements.

In this case, the volume of the employer's business satisfied the Board's prior jurisdictional limitations, laid down in October, 1950,[4] and the proceedings under these criteria had gone forward to the point where the certification petition and the unfair labor practice complaint had been consolidated for a single hearing, which had been held before a Trial Examiner. From the evidence there adduced, the Trial Examiner had made findings of fact concerning the employer's volume of business and the unfair labor practices for which the union seeks relief, and had recommended that the employer be ordered to cease and desist from these unfair labor practices and that it also be ordered to recognize and bargain with the union as the exclusive representative of its employees.

While the Trial Examiner's report was awaiting action by the Board, the Board

1. By petition filed pursuant to 29 U.S.C.A. § 160(f).

2. See N. L. R. B. v. National Gas Co., 8 Cir., 215 F.2d 160, 162, footnote 1.

3. 29 U.S.C.A. §§ 151, 152(6) and (7).

4. See Note, 62 Yale L.J. 116.

promulgated its present jurisdictional limitations. Accordingly, when the case came before it, it adopted the Trial Examiner's findings and conclusions—"to the limited extent that they are consistent with this Decision and Order"—but dismissed the complaint and the representation petition because the employer's volume of business did not satisfy the new standards. 110 N.L.R.B. 75.

The petitioners here urge that the Board, while having the authority to decline jurisdiction over particular labor disputes on a case-by-case basis, cannot adopt a rule "legislating" a substantial number of employees and employers out of the administration of the Act. In the alternative, they contend that the rule adopted is an arbitrary one. Finally, they argue that it cannot be applied retroactively, because, they say, the Trial Examiner's finding that the employer was engaged in commerce within the meaning of the Act established N. L. R. B. jurisdiction as the law of the case.

At the outset, it will be observed that all of these objections stem from a view of the Board's powers and functions as legislative and judicial, or quasi-legislative and quasi-judicial, in character. These analogies, however, while they have been at times useful and convenient in explaining the law relative to administrative agencies, are not always valid or true to the fundamental principles which they are intended to serve.

It is true that some agencies, whose histories extend back to the early development of administrative law in this country, have had their powers and functions molded by decisional law into forms resembling the leading available models at the time, i. e., courts and legislatures. This mode of analysis did not prevail without well-reasoned dissent, however, and administrative agencies created under the later law were not given a judicial construction of their powers so closely simulated to these older forms.

Characteristic examples of this development may be found in the experience of the Interstate Commerce Commission and the Securities and Exchange Commission. Under the Interstate Commerce Act, railroad carriers were required to file schedules of rates with the Interstate Commerce Commission, and the granting of any lesser rate was declared to be unlawful.[5] These rates were required to be reasonable, however, and the ICC had the authority to order reparation for rates it found to be excessive.[6] The Hepburn Act and the Transportation Act granted the ICC the further power of establishing maximum and minimum rates which carriers could charge.[7]

In exercising these powers, the ICC on July 15, 1915, authorized a rate not exceeding $1.20 a ton for coal shipped from Alabama mines to Meridian, Mississippi. Thereafter, it granted several general increases and recommended one general reduction, without specifically authorizing an increase in this particular rate. The Southern Railway Co. and others, however, raised this rate whenever a general increase was allowed, and decreased it when the general reduction was recommended. The rate thus being charged by the carriers in 1925 was $2.03 a ton, and the Eagle Cotton Oil Company thereafter brought an action before the ICC for reparation, on the ground that this rate was excessive. The ICC ruled that the rate was excessive to the extent that it exceeded $1.85 from certain mines and $1.95 from other mines, prescribed these rates as reasonable for the future, and awarded reparation for the amount of the charges exceeding the $1.85 and $1.95 rates, for a period beginning two years before the proceeding was initiated

5.  49 U.S.C.A. § 10.

6.  Texas & P. R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L. Ed. 553.

7.  49 U.S.C.A. § 6(13) (c).

by the shipper. The district court refused to enforce the award for damages, reasoning that the Commission could not retroactively reverse its prior ruling that $2.03 per ton was a reasonable rate.

This court reversed on the narrow ground that the $2.03 rate had not been fixed or prescribed by the Commission. Judge Hutcheson, concurring specially, said that although the $2.03 rate had not been "specifically promulgated by the Commission", "I think it equally plain that, speaking generally, the rate had received the Commission's approval and sanction." He concluded that the ICC had "through a long course of practice * * * built up and established * * a character of flexibility in the matter of the approach to * * * rates and practices * * * in which the principle of res judicata or estoppel by decision has had and can have no just place." Eagle Cotton Oil Co. v. Southern Ry. Co., 5 Cir., 51 F.2d 443, 445, 446.

This view was rejected by the Supreme Court in Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Ry. Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348. The Court there analyzed the ICC's function under the Interstate Commerce Act as judicial in character, and under the Hepburn Act and the Transportation Act as legislative in character. It said that the two functions could be combined, but that

"Where, as in this case, the Commission has made an order having a dual aspect, it may not in a subsequent proceeding, acting in its quasi judicial capacity, ignore its own pronouncement promulgated in · its quasi legislative capacity and retroactively repeal its own enactment as to the reasonableness of the rate it has prescribed." Arizona Grocery Co. v. Atchison Ry., 284 U.S. 370, 389, 52 S.Ct. 183, 186.

Justices Holmes and Brandeis dissented, "for the reasons stated by Judge Hutcheson in the concurring opinion in Eagle Cotton Oil Co. v. Southern Ry. Co., [5

Cir.] 51 F.2d 443, 445." Arizona Grocery Co. v. Atchison Ry., 284 U.S. 370, 390, 52 S.Ct. 183, 186.

If this defined the powers of the ICC in this regard, however, it did not establish a principle of general application, for essentially the same question was decided differently in Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L. Ed. 1995. During the period when successive reorganization plans for a corporation were being submitted to the SEC, the officers, directors and controlling stockholders of the corporation purchased a substantial amount of the corporation's preferred stock on the over-the-counter market. Under the fourth reorganization plan, all preferred stock was to be converted into common stock of the surviving corporation. The SEC refused to approve this plan until it was amended to provide that the preferred stock purchased by insiders would not be converted, but would be surrendered at cost plus dividends accumulated since the purchase dates. The plan was so amended, over the insiders' objection, and approved. The Supreme Court reversed, on the ground that the case law cited as authority for the Commission's action did not in fact support it. Securities and Exchange Comm. v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626. On remand, the Commission still refused to approve the conversion of the insiders' preferred stock to new common stock, on the ground that such a transaction would be inconsistent with the standards of §§ 7 and 11 of the Holding Company Act, 15 U.S.C.A. §§ 79g, 79k.

This decision was appealed, and the Court upheld the Commission's order. It said that the grounds first advanced by the SEC in support of its action were erroneous, and where an administrative agency sets forth improper grounds for its decision, "the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." It remarked that the SEC could act through the

"quasi-legislative promulgation of rules to be applied in the future", but that "any rigid requirement to that effect would make the administrative process inflexible and incapable of dealing with many of the specialized problems which arise." It concluded that the Commission could proceed "by general rule or by individual, *ad hoc* litigation". Regarding the likelihood that the order of the SEC in question was actually the retroactive application of a new rule, rather than the *ad hoc* deciding of a single case, it said, "Hence we refuse to say that the Commission, which had not previously been confronted with the problem of management trading during reorganization, was forbidden from utilizing this particular proceeding for announcing and applying a new standard of conduct." Securities and Exchange Comm. v. Chenery Corp., 332 U.S. 194, 196, 202, 203, 67 S.Ct. 1575, 1577, 1580.

Turning to the case before us, we find strong reason for shedding the confining analogies above adverted to. The National Labor Relations Board, even before the Taft-Hartley amendments gave it the task of policing a whole new set of unfair labor practices,[8] was never able to assume its full jurisdiction. Before 1950, its declinations of jurisdiction were avowedly on a case-by-case basis,[9] and the petitioners admit that this was within the Board's discretion. However, while these decisions were not made pursuant to any announced policy, they followed a course that all who were interested could soon easily predict. Indeed, when the Board in one case deviated from its unannounced policy, it was held to have acted capriciously and arbitrarily. N. L. R. B. v. Guy F. Atkinson Co., 9 Cir., 195 F.2d 141.

What the petitioners here complain of, therefore, is that the Board now acts under an announced policy, rather than a presumed policy, and that it has applied this policy retroactively to them, overturning "the law of the case." We hold in accordance with the Chenery case, supra, that the Board has authority to adopt and reverse policy, either in the form of an individual decision or as rule-making for the future, in any manner reasonably calculated to carry out its statutory duties, without regard to whether such action strictly conforms to the rules applicable to courts or legislative bodies.[10] Therefore, finding, as we do, that the standards adopted by the Board are reasonable,[11] we can discern no valid distinction between a decision made under these criteria and one made under the former unannounced policy. Furthermore, there is no sound reason why standards cannot be applied retroactively, as here, or prospectively, as in N. L. R. B. v. Red Rock Co., 5 Cir., 187 F.2d 76.

We thus hold that the Trial Examiner's finding that the employer was engaged in commerce within the meaning of the Act did not bind the Board as the law of the case, for that concept, also, has no place in circumscribing the Board's action. Finally, we see no merit in the petitioners' contention that the Board erred in not remanding the case for new findings regarding coverage under the current standards, when the petitioners did not set forth in their letter to the Board what new facts they expected would be shown in another hearing.[12]

The order of the Board is

Affirmed.

---

8. 29 U.S.C.A. § 158(b).

9. See note 4, supra.

10. It is clear, however, that legislation can act retroactively. Carpenter v. Wabash Ry. Co., 309 U.S. 23, 60 S.Ct. 416, 84 L. Ed. 558.

11. Cf. Haleston Drug Stores v. N. L. R. B., 9 Cir., 187 F.2d 418.

12. Cf. Jacobsen v. N. L. R. B., 3 Cir., 120 F.2d 96.