**HALESTON DRUG STORES, Inc. v. NATIONAL LABOR RELATIONS BOARD.**

**SMITH v. NATIONAL LABOR RELATIONS BOARD.**

Nos. 12412, 12446.

United States Court of Appeals,
Ninth Circuit.

Feb. 15, 1951.

Masters & Masters, Portland, Ore., for Haleston Drug Stores, Inc.

Gibson, Dunn & Crutcher and J. Stuart Neary, Los Angeles, Cal. (William F. Spalding, Los Angeles, Cal., of counsel), for H. W. Smith.

Ida Klaus, Sol., National Labor Relations Board, Norton J. Come, Atty., National Labor Relations Board, Washington, D. C., for respondent.

Green, Landye & Richardson and Burl L. Green, Portland, Ore., J. W. Brown, Cincinnati, Ohio, as amicus curiae.

Before HEALY and POPE, Circuit Judges, and CLARK, District Judge.

HEALY, Circuit Judge.

These are proceedings to review orders of the National Labor Relations Board. The point in controversy is whether the Board, notwithstanding the existence of jurisdiction, has discretionary authority to dismiss unfair labor practice complaints on policy grounds.

The petitioner in No. 12,446 does business as A-1 Photo Service in San Pedro, California. In April, 1948, he filed with the regional office of the Board a charge alleging that a local union of the A. F. of L. and certain of its agents were engaged in unfair labor practices affecting commerce. The general counsel of the Board directed the issuance of a complaint. Aft-er a hearing the trial examiner issued his intermediate report finding that the petitioner's business was a retail store engaged in buying and selling photographic equipment and supplies, greeting cards and stationery, and that it regularly employed three clerks. He found that during the previous year the store purchased supplies totaling about $100,000, of which 44 per cent was obtained from outstate wholesalers, the balance being purchased from wholesalers located in California who had obtained a substantial portion thereof from out of the state. During the comparable period sales totaled about $133,000, practically all of which were made to local retail customers. The examiner concluded that the petitioner was engaged in commerce within the meaning of the Act, and that therefore the Board had jurisdiction. As regards the unfair practices complained of he found that the union and its officers were guilty of a refusal to bargain collectively, but had not committed other practices alleged.

The Board upon consideration of the record and the exceptions of the parties dismissed the complaint in its entirety. It accepted the commerce facts as found and did not disturb the other findings of the examiner or his conclusion that the petitioner was engaged in commerce. It decided, however, that the "employer's business is essentially local in nature and relatively small in size, and that interruption of his operations by a labor dispute could have only the most remote and insubstantial effect on commerce." In the exercise of what it believed to be its discretion it ordered the dismissal on the ground that the assertion of jurisdiction would not effectuate the purpose of the Act.

In No. 12,412 the petitioner, Haleston Drug Stores, operates four retail drug stores in Portland, Oregon. In October, 1948, it petitioned the Board for an election among its employees to determine their desires in respect of their representation. After a hearing the Board made findings respecting the petitioner's business. It found that the latter sells at its stores a conventional line of drugs and

cosmetics, operates a soda fountain, and prepares and sells medical prescriptions. During the preceding year it had made purchases for resale totaling about $189,000, of which approximately 30 per cent was shipped to it directly from points outside Oregon, the balance being largely purchased within the state from warehouses engaged in interstate commerce. Sales during the same period totaled about $308,000, all being made locally at the petitioner's retail stores. On these facts the Board concluded that assertion of jurisdiction in the representation proceeding would not effectuate the policies of the Act "inasmuch as the employer's business is essentially local in character." Accordingly it dismissed the proceeding.

Shortly prior to this disposition the petitioner filed a charge with the Board's regional director alleging that a named union was in violation of § 8(b) (2) of the Act, 29 U.S.C.A. § 158(b) (2), in attempting to force Haleston to sign a collective bargaining contract said to contain illegal union security provisions. The general counsel, acting through the regional director, thereupon issued an unfair labor practice complaint. The trial examiner appointed in the case granted the union's motion to dismiss, predicating his action on the ruling of the Board in the representation matter. The petitioner and the general counsel sought review before the Board. The latter after a hearing sustained the examiner on the finding that the petitioner's operations were essentially local, hence their interruption by a labor dispute would have only a remote and insubstantial effect on commerce. It ordered a dismissal on the ground that assertion of jurisdiction over Haleston's business would not effectuate the policy of the Act.

It is of this latter order and the one made in No. 12,446 that review is here sought. The case for the petitioners rests on the provision of the Labor Management Act of 1947 setting up the office of general counsel. This provision, incorporated in § 3 of the National Labor Relations Act as subsection (d), reads: "(d) There shall

be a General Counsel of the Board who shall be appointed by the President, by and with the advice and consent of the Senate, for a term of four years. The General Counsel of the Board shall exercise general supervision over all attorneys employed by the Board (other than trial examiners and legal assistants to Board members) and over the officers and employees in the regional offices. He shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 10, and in respect of the prosecutions of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law." [1]

In effect, the petitioners contend that by this legislation Congress took from the Board and vested in the general counsel the authority of making the policy decision reached by the Board in these cases. They argue that when the general counsel issues a complaint he necessarily finds that the effect of the unfair labor practice upon commerce is sufficiently substantial to warrant the exercise of the Board's jurisdiction, and that since he is given "final authority on behalf of the Board" in respect of the issuance and prosecution of unfair labor practice complaints, his determination of the point is conclusive upon the Board. The premise of the argument is undoubtedly correct but we think the conclusion drawn from it puts too great a strain on the provisions of § 3(d).

The courts have uniformly recognized that the National Labor Relations Act did not confer private rights, but granted only rights in the interest of the public to be protected by a procedure looking solely to public ends. The proceeding authorized to be taken by the Board was not for the adjudication or vindication of private rights. The Board's function as an administrative agency is to give effect to the declared public policy of Congress. These propositions have been too long and too firmly established to justify citation of the cases.[1a]

1. 61 Stat. 139.

1a. As illustrative of the many cases consult Amalgamated Workers v. Consoli-

By the express language of § 10(a) the Board was and still is *empowered* (not directed) to prevent persons from engaging in unfair labor practices affecting commerce. Its discretionary authority in respect of its assertion of jurisdiction was never, so far as we are informed, questioned under the act as it existed prior to 1947. In NLRB v. Indiana & M. Electric Co., 318 U.S. 9, 18, 19, 63 S.Ct. 394, 400, 87 L.Ed. 579, the Court noted that "The Board has wide discretion in the issue of complaints. * * * It is not required by the statute to move on every charge; it is merely enabled to do so." [2] Consult also Amalgamated Workers v. Consolidated Edison Co., 309 U.S. 261, 265, 60 S.Ct. 561, 84 L.Ed. 738. The Board itself, without judicial challenge, acted on the assumption that it could, for reasons of policy or for budgetary or other reasons, decline to issue an unfair labor practice complaint, or to dismiss a complaint after issuance without determining the existence of an unfair practice, if in its reasoned judgment the policies of the act would be best served by that course. Of this assumption and practice one can not doubt that Congress was fully cognizant.

■ By § 3(d), supra, the authority formerly exercised by the Board to investigate charges and to issue complaints under § 10 was vested in the general counsel. The well-understood purpose of Congress here was to effect a separation of the prosecuting and adjudicating functions within the Board.[3] The latter was continued "as an agency of the United States," § 3(a), that is to say, it was not transmuted into a court but remained an administrative body exercising quasi-judicial powers.[4]

■ Section 10 of the original act, embracing six subdivisions, (a) to (f), dealt with the procedure for the preven-

2. For the basis of this holding see § 10 (b), which read: "Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, * * * shall have power to issue * * * [a] complaint". [Emphasis supplied.] This verbiage remains unchanged in the section as it now exists.

3. Senator Taft stated this to be the purpose of § 3(d). He remarked on the fact that in recent years the Board itself had adopted regulations delegating the power of issuing complaints to the various regional directors, with leave to a person aggrieved by the refusal of the regional officer to issue a complaint to appeal the matter to Washington. He observed that these appeals, according to testimony of the chairman of the Board, were considered by an anonymous committee of subordinate employees. "What the conference amendment does is simply to transfer this 'vast and unreviewable power' from this anonymous little group to a statutory officer responsible to the president and to the Congress." (93 Cong.Rec. 6859, June 12, 1947.)

Walter Gellhorn, Director of the Attorney General's Committee on Administrative Procedure, remarks of the purpose of the separation of these functions:

"The opposition to lodging in one agency the authority both to institute and to adjudicate proceedings rests on a simply stated thesis: One who resolves to maintain an action and then serves as an advocate of a particular position is incapacitated to appraise fairly and objectively the arguments advanced against the view espoused." Gellhorn, Federal Administrative Proceedings (Johns Hopkins, 1941), p. 18.

4. The Hoover Commission has grouped the National Labor Relations Board, along with the Federal Trade Commission, as an "independent regulatory commission." See Task Force Report on Regulatory Commissions (Appendix N), Government Printing Office, 1949. In this report the Hoover Commission noted that "Each of the commissions is largely engaged in making policies and defining standards of conduct within the framework of the statute. In great part, this is carried on through quasi-judicial procedures, but it involves more than adjudication of a court. In making decisions or regulations defining a standard of conduct, prescribing a duty, or granting a privilege, the commission must act in the light of the conditions in the industry and the statutory objectives." [Emphasis supplied.]

422

tion of unfair labor practices. So far as pertinent to the present inquiry its language was left undisturbed by the 1947 legislation. Nothing was added to the section suggestive of an intent on the part of Congress to circumscribe or curtail the Board's authority in respect of the prevention of such practices, or to render less flexible the unfair labor practice provisions of the original act. After a complaint has been issued by the general counsel it remains, as before, the duty and function of the Board to pass upon its jurisdiction, to determine whether unfair practices have been committed, what remedy would best effectuate the policies of the Act, and whether to seek enforcement of its order in the courts; and concededly it still adjudicates public rather than private rights.

In the complaint stages of an unfair labor practice proceeding the exercise of jurisdiction appears clearly discretionary. The language of § 10(b), as well as the judicial interpretation given the Act, so indicates. Despite the Act's broad coverage, authority obviously resides in the general counsel to refrain from issuing a complaint even though legal jurisdiction exists.[5] Accordingly, the question is not whether there is power to withhold jurisdiction on the grounds the Board has advanced here, but whether the power resides solely in the general counsel. Is it not also possessed by the Board upon its review of a complaint which the general counsel has seen fit to issue? We think the answer to the question must be in the affirmative. There is simply no evidence of a congressional purpose to take from the Board the power of dismissal on grounds having to do with the effectuation of the policy of the Act. Certainly the language of § 3(d) affords no satisfactory evidence of such a purpose.

The petitions for review are dismissed.

5. The fact that Mr. Denham, while serving as general counsel, was of opinion that jurisdiction should be exerted to the limit authorized by the law is not determinative. The present general counsel may and presumably does pursue a less inflexible policy, that is to say, one more in harmony with the views of the Board. Such oscillations in rigor are characteristic of prosecuting officers.