LOCAL UNION NO. 12, PROGRESSIVE MINE WORKERS OF AMERICA, DIST. NO. 1 v. NATIONAL LABOR RELATIONS BOARD.

No. 10310.

United States Court of Appeals Seventh Circuit.

May 23, 1951.

Rehearing Denied June 11, 1951.

G. William Horsley, R. W. Deffenbaugh, Springfield, Ill., for petitioner.

David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel and Norton J. Come, Atty., National Labor Relations Board, Washington, D. C., George J. Bott, Gen. Counsel, and Alice Andrews, Atty., National Labor Relations Board, Washington, D. C., for respondent.

Before KERNER, FINNEGAN, and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

This is a petition to review and set aside an order of the National Labor Relations Board dismissing an unfair labor practices complaint that had been issued upon charges filed by petitioner against Rawalt Coal Company. The question is whether the Board, as a means of effectuating the policies of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., has discretionary authority to decline jurisdiction because the Coal Company's operations had an insubstantial impact on commerce.

The petitioner in its amended charge alleged that Rawalt Coal Company was engaging in unfair labor practices within the meaning of § 8(a) (1), (3), (4) and (5) of the Act. Based upon this charge, a hearing was had before a trial examiner who issued his intermediate report finding

that the Coal Company, employing 19 men, was engaged, at a small slope near Canton, Illinois, in mining and selling coal. The mine was not located on a railroad, and shipments therefrom were made by truck. During the period from September 1948 to August 1949, the Coal Company produced about 30,000 tons of coal, of which 9,000 tons were sold to the Illinois Coal and Dock Company which, in turn, sold 2,500 tons of the coal to an interstate common carrier, and the remainder to certain industrial domestic consumers. The examiner found that the Coal Company had committed unfair labor practices in violation of § 8(a) (1), (3) and (4) of the Act, and recommended, inter alia, that 11 of the Coal Company's employees be reinstated to their former or substantially equivalent positions, and made whole for any loss of pay suffered by them.

The Board accepted the examiner's findings and found that the dollar value of the coal sold was $35,000. It pointed to the fact that there was no evidence that the Coal Company had made any out-of-State purchases or that any of the coal produced had been shipped outside the State. It concluded that the Coal Company's operations did affect commerce within the meaning of the Act, and were subject to the jurisdiction of the Board. It added, however, that, as a matter of policy, it had "since the issuance of the Intermediate Report in this case * * * adopted certain minimum requirements for the assertion of its jurisdiction," and therefore it "becomes necessary for us * * * to examine the commerce facts in order to ascertain whether these minimum requirements have been met."[1] And since the coal was sold locally and the value of the sales to interstate firms was less than $50,000, the Board concluded that the impact on commerce was not substantial enough to warrant the exercise of jurisdiction.

■ Although petitioner concedes, as it must, that whether the activities of a business affect commerce within the meaning of the Act depends solely upon the facts and circumstances of each case,[2] yet it contends that Congress intended the Act to apply to all business which affects interstate commerce, and since the business of the Coal Company did affect commerce, the Board was without authority to dismiss the complaint.

A somewhat similar contention was made in Haleston Drug Stores v. National Labor Relations Board, 9 Cir., 187 F.2d 418. In that case petitioners also contended that since the Board found that petitioners' operations were subject to the Act, the Board lacked authority, as a matter of policy, to discontinue the proceedings on the ground that the impact on commerce was not significant. The court rejected this contention and held that the Board, as a matter of policy, had the power to dismiss the proceeding because the impact on commerce was not substantial enough to warrant the exercise of jurisdiction.

■ In National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, after stating what was meant by the term "affecting commerce," the Court, 301 U.S. at page 31, 57 S.Ct. at page 621, said: "The grant of authority to the Board does not purport to extend to the relationship between all industrial employees and employers. * * It purports to reach only what may be deemed to burden or obstruct that commerce * * *. It is the effect upon commerce, not the source of the injury, which is the criterion."

■ Under the Wagner Act Congress reposed in the Board complete discretionary power to determine in each case whether the public interest requires it to act, National Labor Relations Board v. Newark Morn-

1. These minimum requirements were explained by the Board in Hollow Tree Lumber Co., 91 N.L.R.B. No. 113. 26 L.R.R.M. 1543.
2. Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 223–224, 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Indiana & Michigan Electric Co., 318 U.S. 9, 18–19, 63 S.Ct. 394, 87 L.Ed. 579; National Labor Relations Board v. Barrett Co., 7 Cir., 120 F.2d 583, 586.

ing Ledger Co., 3 Cir., 120 F.2d 262, 268, 137 A.L.R. 849, but the Board's jurisdiction was not to be exercised unless in the opinion of the Board the unfair labor practice complained of interfered so substantially with the public rights created by § 7 of the Act as to require its restraint in the public interest. This is evidenced by the language of § 10(a) which empowers rather than directs the Board to prevent unfair labor practices, and by that of § 10(b) which provides: "Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board * * * shall have power to issue * * * [a] complaint." And in the Haleston case, 187 F.2d at page 422, the court said: "Nothing was added [by the Labor Management Relations Act, 29 U.S. C.A. §§ 153 (a, d) (160) (a, b)] to the section suggestive of an intent on the part of Congress to circumscribe or curtail the Board's authority in respect of the prevention of such practices, or to render less flexible the unfair labor practice provisions of the original act. * * *" And in Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271, the Court, in speaking of the power with which Congress had invested the Board by the Wagner Act, said: "The exercise of the process was committed to the Board, subject to limited judicial review. Because the relation of remedy to policy is peculiarly a matter for administrative competence, courts must not enter the allowable area of the Board's discretion and must guard against the danger of sliding unconsciously from the narrow confines of law into the more spacious domain of policy." That is to say, courts may not "substitute their own judgment" for that of an administrative agency, Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 227, 63 S.Ct. 589, 87 L.Ed. 724, or undertake to advise an agency "how to discharge its functions," Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 617–618, 64 S.Ct. 281, 88 L.Ed. 333.

■■ It has been held that the Board "is vested with lawful discretion to determine whether a proceeding, when once instituted, may be abandoned," National Labor Relations Board v. Federal Engineering Co., 6 Cir., 153 F.2d 233, 234, and the Board has dismissed cases on policy grounds, including the insubstantiality of the enterprises,[3] and the Supreme Court has recognized that the Board, notwithstanding the existence of legal jurisdiction, could decline to issue an unfair labor practice complaint. National Labor Relations Board v. Indiana & Michigan Electric Co., 318 U.S. 9, 18, 63 S.Ct. 394, 87 L.Ed. 579. And where the employees are themselves engaged in interstate commerce, the question is whether the alleged unfair labor practices do actually threaten interstate commerce in a substantial manner. In determining that factual question, regard should be given all the existing circumstances, but the question in such a case relates not to the existence of the federal power but to the propriety of its exertion in a given state of facts. Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 223–224, 59 S.Ct. 206, 83 L.Ed. 126.

■ Applying the principles enunciated in the cases cited in this opinion, we are impelled to the conclusion that the Board had the power, in view of the facts in this case, to dismiss the proceedings on the ground that the impact on commerce was not substantial enough to warrant the exercise of jurisdiction, if in its opinion this course could best effectuate the policies of the Act. And from our examination of the record we have not been able to find any compelling reason which would warrant us in saying that the Board abused its discretion when it determined that the public interest did not require it to retain jurisdiction.

But for two additional points raised by petitioner, what we have thus far said would be sufficient to dispose of the case. Petitioner says that the Board should have retained jurisdiction because the examiner had recommended that 11 of the employees

3. Godchaux Sugars, Inc., 12 N.L.R.B. 568; Consolidated Aircraft Corp., 47 N. L.R.B. 694; Brown & Root, Inc., 51 N. L.R.B. 820; and S. & R. Baking Co., 65 N.L.R.B. 351.

be reinstated and made whole for any loss of pay. Hence, petitioner says, private rights were involved, and the Board should have retained jurisdiction and proceeded to judgment.

In this proceeding we are not dealing with private rights, Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 60 S.Ct. 561 84 L.Ed. 738, and it will be enough to say that while it is true that the National Labor Relations Act created rights against employers which did not exist before, such rights were not private rights vested in the employees but were public rights, protected by the power placed by the Act in the Board, National Labor Relations Board v. Edward G. Budd Mfg. Co., 6 Cir., 169 F.2d 571, 577. The function of the Board is to be performed in the public interest and not in the vindication of private rights. Haleston Drug Stores v. National Labor Relations Board, 9 Cir., 187 F.2d 418, 420. The Act does not create rights for individuals which must be vindicated according to a rigid scheme of remedies, nor does the Board exist for the "adjudication of private rights." Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 193–194, 61 S.Ct. 845, 85 L.Ed. 1271.

■ Finally, petitioner makes the point that the Board's conclusion, that the Coal Company's operations failed to meet the relevant minimum standard for the assertion of jurisdiction, was improper because such application was "retroactive." With this contention we cannot agree. This is not a case where the Board, after having entered a final decision based on one set of rules, later changes the rules and as a result alters its previous decision. Here the rule was enunciated on October 3, 1950, Hollow Tree Lumber Co., 91 N.L.R.B. No. 113, CCH Labor Law Reports ¶10,333. This was more than one month after the examiner had issued his report, and it was before petitioner had filed its exceptions to the report and thus necessarily prior to the Board's decision. Accordingly, application of the rule by the Board, when the case subsequently came to it for decision, cannot be deemed retroactive. Moreover, we think petitioner had no legally cognizable right in any particular Board jurisdictional policy.

In conclusion, we desire to note that we have not overlooked National Labor Relations Board v. Red Rock Co., 5 Cir., 187 F.2d 76, cited by petitioner. We do not believe the case is applicable here. There the Board, by the time the jurisdictional policy was announced, had not only entered a final decision, but it had also relinquished jurisdiction over the case as a result of petitioning for enforcement under § 10 of the Act.

For the reasons stated, the petition for review will be dismissed. It is so ordered.