**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PEASE OIL COMPANY, Respondent.**

**No. 164, Docket 25805.**

United States Court of Appeals
Second Circuit.

Argued Feb. 2, 1960.

Decided May 26, 1960.

Madden, Judge, dissented.

Duane Beeson, Atty., National Labor Relations Board, Washington, D. C. (Stuart Rothman, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Fannie M. Boyls and Richard Scupi, Attys., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

James Otis Porter, Buffalo, N. Y., for respondent.

Before MEDINA and WATERMAN, Circuit Judges, and MADDEN, Judge, United States Court of Claims.*

WATERMAN, Circuit Judge.

This is a petition of the National Labor Relations Board, pursuant to Section 10(e) of the amended National Labor Relations Act, 29 U.S.C.A. § 160(e), for enforcement of a Board order issued against respondent Pease Oil Company on April 11, 1959. The Board's decision and order are reported at 123 N.L.R.B. No. 82. Since the alleged unfair labor practices occurred in Buffalo, New York, within this judicial circuit, this court has jurisdiction over the petition under Section 10(e).

The following statement of facts is taken from the reports of the Board's examiner. Respondent is engaged in the wholesale and retail distribution of gasoline and fuel oil. On October 31, 1957 respondent had four truck drivers in its employ: Edward Place, Oscar Schurpf, Robert Strength, and Joseph Chirico. On October 29, the four drivers had applied for membership in Truck Drivers Local Union No. 449 of the Teamsters. On Thursday, October 31, the four drivers met with George Bastian, respondent's General Manager. Place acted as spokesman for his co-workers, and union membership was the central topic of discussion. The meeting ended somewhat inconclusively, but certainly without any statement from the drivers that they intended to withdraw their applications for union membership. On Monday, November 4, Place, the driver with the longest record of continuous service, was laid off. The following day Bastian held a meeting with the three remaining drivers. The two drivers of these three with the greatest seniority, Schurpf and Strength, were given wage increases of 10 cents per hour. Chirico was then excused from the meeting, whereupon Bastian asked Schurpf and Strength whether they would withdraw from the union, and Bastian indicated that a refusal to withdraw might jeopardize their future employment. On Wednesday, November 6, Chirico was called into Bastian's office and was told that his future employment with respondent depended upon his withdrawal from the union. Chirico replied that he would withdraw only if the others did. On Saturday, November 9, Schurpf and Strength notified Bastian that they did not intend to withdraw from the union. On Monday, November 11, Chirico was discharged.

The examiner found that the layoff of Place and the discharge of Chirico violated Section 8(a) (1) and (a) (3) of the Act, 29 U.S.C.A. § 158(a) (1), (a) (3), and that Bastian's conduct in various interviews with Schurpf, Strength, and Chirico constituted restraint and coercion of respondent's employees in the exercise of their statutory rights. The examiner recommended that the Board order respondent to cease and desist from these unfair labor practices and to reinstate Place and Chirico with back

* Sitting by designation.

pay and with restored seniority rights. The Board adopted its examiner's findings of fact and conclusions of law, and issued the order the examiner recommended.

Respondent resists enforcement of the Board's order, and, in so doing, it does not challenge the above findings of fact and conclusions of law, even though this amounts to a tacit admission of an unequivocal, even conscious, violation of the Act. Instead respondent argues that it would be "unfair" and "inequitable" to enforce the order because respondent "relied upon" the Board's jurisdictional standards in force in 1957, standards that had been announced in Jonesboro Grain Drying Cooperative, 110 N.L.R.B. 481, 483–84 (1954), and which stated that the Board would not hear complaints relating to employment in concerns having as little effect upon interstate commerce as respondent.

The phrase "jurisdictional standard," though coined by the Board itself, is a misnomer. Since the creation of the Board its statutory grant of power, i. e., its "jurisdiction" in the strict sense of that word, has extended to unfair labor practices "affecting commerce." Section 10(a) of the Act, 29 U.S.C.A. § 160(a), and see Section 2(6) and (7), 29 U.S. C.A. § 152(6), (7). Early in its history, however, the Board came to the conclusion that if it were to take cognizance of all complaints within its statutory grant of power it would be unable to decide any complaint with the thoroughness and promptitude necessary to achieve the objectives of the Act. Therefore the Board refused to hear certain complaints which clearly were within its statutory power to decide. In determining whether to hear a given complaint, a principal criterion the Board adopted was the volume of interstate commerce engaged in by the employer. Complaints which related to employment in concerns whose volume of interstate commerce fell below a certain minimum figure were refused a hearing as having an insufficient effect on commerce. Later, in an apparent effort to reduce the number of complaints reaching it, and in order to make clear the objectivity of its decision to exercise its conceded jurisdiction in a particular case, the Board determined to publish its "jurisdictional standards." See Hollow Tree Lumber Co., 91 N.L.R.B. 635, 636 (1950).

With this understanding of the purpose and function of the Board's jurisdictional standards respondent's argument can be seen to be an unusual one indeed. Concededly, at the time of respondent's unfair labor practices, the Board had announced that it would not hear complaints which involved employers as small as respondent, even though respondent's participation in interstate commerce at all times brought it within the Board's statutory power and within the directives of the Act. Thus respondent's "reliance" was simply an expectation that it might pursue whatever labor policy it saw fit, safe from any Board interference no matter how many violations of the Act it might commit. We have no hesitation in disappointing this expectation.

An Act of Congress imposes a duty of obedience unrelated to the threat of punishment for disobedience. If this were merely a suit in equity between two private litigants, we expect that respondent's violations of the law would deprive it of standing to interpose equitable defenses such as estoppel or unclean hands. See Johnson v. Yellow Cab Transit Co., 1944, 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814; Shinsaku Nagano v. McGrath, 7 Cir., 1951, 187 F.2d 753, 758–759; Leo Feist, Inc. v. Young, 7 Cir., 1943, 138 F.2d 972, 975.

But of course this is not a dispute between private litigants. It has been quite properly said that because a governmental agency is charged with the protection of public interests a court should be very cautious in permitting equitable defenses to be asserted against it. See Eichleay Corp. v. N. L. R. B., 3 Cir., 1953, 206 F.2d 799, 806; N. L. R. B. v. Kingston Cake Co., 3 Cir., 1953, 206 F.2d 604, 611. The reason for this caution is clear, and particularly clear in the

present case. What equitable considerations can respondent assert in opposition to the fact that it discharged the two drivers by violating the Act—drivers whose reinstatement with back pay the Board here seeks to compel? What equitable considerations outweigh the fact that, if we should refuse to enforce the cease-and-desist portions of the Board's order, respondent's present employees would be now as unprotected as were the two drivers?

Furthermore, we conclude that the prior cases afford no support for the result respondent would have us reach. Whether to assert jurisdiction in a given case is a matter within the Board's discretion and the Board's decision may be overturned by a court only when that discretion has been abused. Local Union No. 12, P. M. W. A. v. N. L. R. B., 7 Cir., 1951, 189 F.2d 1, 4, certiorari denied 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653; Haleston Drug Stores v. N. L. R. B., 9 Cir., 1951, 187 F.2d 418; cf. N. L. R. B. v. Denver Bldg. & Const. Trades Council, 1951, 341 U.S. 675, 684, 71 S.Ct. 943, 95 L.Ed. 1284. Deferring for the moment discussion of N. L. R. B. v. Guy F. Atkinson Co., 9 Cir., 1952, 195 F.2d 141, upon which respondent places heaviest reliance, the remaining cases where courts have held that the Board abused its discretion fall into three clearly defined categories:

First, the Board may not refuse to exercise its jurisdiction on an industry-wide basis. Office Employees Int. Union, etc. v. N. L. R. B., 1957, 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846, rehearing denied 354 U.S. 928, 77 S.Ct. 1375, 1 L.Ed. 2d 1441; Hotel Employees, etc. v. Leedom, 1958, 358 U.S. 99, 79 S.Ct. 150, 3 L.Ed.2d 143;[1] cf. N. L. R. B. v. Gene Compton's Corp., 9 Cir., 262 F.2d 653, 656. Respondent, who is objecting to the exercise of Board power, can hardly derive any comfort from these cases which hold that the Board's duty under the Act forbids it to renounce its power too broadly.

Second, enforcement has been denied where the Board has appeared to the court to have been arbitrary or capricious in refusing to consider other complaints of a similar nature to the one before the court. Thus in N. L. R. B. v. National Gas Co., 8 Cir., 1954, 215 F.2d 160, 163, the Eighth Circuit refused enforcement when it appeared that the Board had adopted a jurisdictional standard with reference to all pending and future complaints which would have excluded respondent's business as having an insufficient effect upon commerce. Therefore in that case the Court held that enforcement would result in "discrimination" against respondent. See also N. L. R. B. v. Kartarik, Inc., 8 Cir., 1955, 227 F.2d 190. The Fifth Circuit seems to have afforded greater scope to the Board's discretion on this point, Optical Workers' Union, etc. v. N. L. R. B., 5 Cir., 1955, 227 F.2d 687, certiorari denied 351 U.S. 963, 76 S.Ct. 1027, 100 L.Ed. 1484; N. L. R. B. v. Red Rock Co., 5 Cir., 1951, 187 F.2d 76, but even under the Eighth Circuit view the Board here cannot be charged with caprice or discrimination. The Board's revised and presently applicable jurisdictional standards, announced in Siemons Mailing Service, 122 N.L.R.B. 81, 84 (1958), were to be applied as of November 14, 1958 to all *pending* and future complaints. Hence it is clear that the Board has not arbitrarily singled out respondent for prosecution.

Third, in Pedersen v. N. L. R. B., 2 Cir., 1956, 234 F.2d 417, this court found an abuse of discretion where the Board, after conducting hearings in a labor dispute at that time within its jurisdictional standards, subsequently revised its standards and thereby precluded consideration of the complaint of an employee who was discharged after the labor dispute hearings because he testi-

1. We express no opinion as to whether Section 701(a) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 164(c) undermines the authority of these cases. Moreover, although the point was not briefed, we do not believe Section 701(a) has a bearing on the question here before us.

fied there. When he testified Pedersen may be said to have relied upon the Board's then jurisdictional standards, but the resemblance between that case and the present case is only verbal. Pedersen testified in order to effectuate the objectives of the Act, and he quite properly expected that the Board would protect him against any retributive measures his employer might subsequently attempt. Here, on the other hand, respondent's purpose was to subvert the objectives of the Act, and its expectation was the hardly laudable one that it would escape punishment for an illegal activity. The Pedersen case is quite similar to N. L. R. B. v. International Brotherhood of Teamsters, etc., Local 41, 8 Cir., 1955, 225 F.2d 343, where the court held the Board could not obtain enforcement of an order premised upon a retroactive reversal of the Board's prior interpretation of the Act. It is clear, however, that in many cases an agency is permitted to revise retroactively its interpretation of a law, Automobile Club of Michigan v. C. I. R., 1957, 353 U.S. 180, 182–186, 77 S.Ct. 707, 1 L.Ed.2d 746, rehearing denied 353 U.S. 989, 77 S.Ct. 1279, 1 L.Ed.2d 1147; Wolinsky v. United States, 2 Cir., 1959, 271 F.2d 865, and the fact of one's reliance upon the prior interpretation does not invariably preclude retroactive revision by the agency, N. L. R. B. v. National Container Corp., 2 Cir., 1954, 211 F.2d 525, 534–535; Atlas Tack Corp. v. New York Stock Exchange, 1 Cir., 1957, 246 F.2d 311, 318–319, 66 A.L.R.2d 664. Cf. Leedom v. Int. Bro. of Elec. Workers, D.C.Cir., 1960, 278 F.2d 237. Surely, if an agency may retroactively revise its interpretation of the law against one who has patterned his conduct upon the agency's prior interpretation, the agency may retroactively revise a self-imposed restraint upon the extent of enforcement in order to punish conduct clearly violative of the agency's consistent interpretation of the law.

This leaves respondent only N. L. R. B. v. Guy F. Atkinson Co., 9 Cir., 1952, 195 F.2d 141 as support for the proposition that the Board may not apply a revised jurisdictional standard to conduct that occurred prior to the date when the revised standard was announced. There is language in Atkinson suggesting that the court's decision there rested upon the fact that the party charged with an unfair labor practice was "innocent of any conscious violation of the act." 195 F.2d 141, 149. If this is the Atkinson holding, it obviously is no bar to en- forcement of the Board's order in the present case. If, however, the Atkinson case was intended to announce a more general rule of law, it appears to have been overruled, *sub silentio*, by subsequent cases in the Ninth Circuit. See N. L. R. B. v. Daboll, 9 Cir., 1954, 216 F.2d 143, 144, certiorari denied 348 U.S. 917, 75 S.Ct. 299, 99 L.Ed. 719; N. L. R. B. v. W. B. Jones Lumber Co., 9 Cir., 1957, 245 F.2d 388, 391; cf. N. L. R. B. v. Olaa Sugar Co., 9 Cir., 1957, 242 F.2d 714, 720–721.

Respondent has been guilty of unfair labor practices. We have rejected its argument that reliance upon Board jurisdictional standards in force at the time of these unfair labor practices is a defense to Board action. We see no obstacle to enforcement of the Board's order; and, accordingly, the Board's petition for enforcement is herewith granted.

MADDEN, Judge (dissenting).

The Labor Board's practice of announcing, from time to time, standards based on dollar volume of business, type of business and other qualifications has given rise to problems almost unique. The Act confers jurisdiction in cases of unfair labor practices affecting interstate commerce. It was early decided that the volume of the commerce was immaterial, so long as it exceeded that to which the courts would apply the maxim *de minimis*. National Labor Relations Board v. Fainblatt, 306 U.S. 601, 607, 59 S.Ct. 668, 83 L.Ed. 1014. From the beginning the Board, for budgetary or other reasons, has not exercised all the jurisdiction which the Act conferred up-

on it. It was an embarrassment to the Board, and to its local agents in the field, to justify to persons claiming to be the victims of unfair practices, the Board's inaction in cases in which it undoubtedly had the power to act.

The Act, after defining the unfair labor practices to which the Act applies says, in section 10(a), 29 U.S.C.A. § 160(a), "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice * * * affecting commerce * * *" The courts have held that the Board has wide discretion as to whether or not to proceed with or award a remedy even in cases which fall within the statutory jurisdiction of the Board. "It is not required by the statute to move on every charge; it is merely enabled to do so." National Labor Relations Board v. Indiana and Michigan Electric Co., 318 U.S. 9, 18, 63 S.Ct. 394, 400, 87 L.Ed. 579. See also National Labor Relations Board v. Denver Building & Const. Trades Council, 341 U.S. 675, 684, 71 S.Ct. 943, 95 L.Ed. 1284; Haleston Drug Stores v. National Labor Relations Board, 9 Cir., 187 F.2d 418, 421, certiorari denied 342 U.S. 815, 72 S.Ct. 29, 96 L.Ed. 616. The discretion is not unlimited, and has been held to have been arbitrarily exercised in Office Employees International Union, etc. v. National Labor Relations Board, 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846; Hotel Employees Local No. 255 v. Leedom, 358 U.S. 99, 79 S.Ct. 150, 3 L.Ed.2d 143.

As illustrated by the instant case, the Board, after many years of proceeding without announcement of the standards which it, in practice, used in determining whether to proceed with cases, adopted the policy of announcing defined standards. In the instant case, as we have seen, the announced standards were based upon dollar volume of business. Such announcements would have the effect, and to a degree, the purpose, of advising the public that unless those standards were satisfied, the victim of unfair labor practices by employers or unions could not look to the Board for relief.

The instant case presents the question whether, a certain standard having been announced, and an employer having acted upon the assumption that it would be adhered to, he may be brought to book on the basis of a wholly different standard later announced, which later standard is well within the jurisdiction conferred upon the Board by the statute.

The Board itself, in C. A. Braukman, etc. and International Union of Operating Engineers, 94 N.L.R.B. 234, dealt with the same problem. It refused to apply its revised standards retroactively to an enterprise which, at the time of the commission of the unfair labor practices, did not satisfy the Board's then applicable standards. It said:

"The Board believes that the question should be answered in the negative. This result is dictated not only by the Board's obligation to respect its own prior decisions, but also by a desire for fair play. It would be inequitable now to hold the Respondent liable for the activities in question, as the Board, almost two years ago, in effect advised the Respondent that such activities occurred at a time when 'it would [not] effectuate policies of the Act to assert jurisdiction' over the Respondent's operations."

By the time the Board reached the instant case, it had changed its view and had decided and announced in Siemons Mailing Service, 122 N.L.R.B. 13, that it would apply its revised jurisdictional standards in all future and pending cases. And it did so apply them in the instant case.

I think that the Board's language in its Braukman case, supra, was an excellent expression of the standard of conduct which the Government and its agencies should observe toward the public. The question is essentially one of fair play. The Board has, as the statute authorized it to do, petitioned this Court for a decree enforcing the Board's order. A Court of Appeals, in determining whether or not such a decree should be issued, sits as a Court of Equity, and

will not exercise the power of such a court to produce a result which it regards as essentially unfair.

The respondent's conduct in this case was not *malum in se*. Such conduct was completely lawful and was widely practiced up to the time of the enactment of the National Labor Relations Act in 1935. When the Board, in order to achieve what it regarded as a more effective administration of the Act, advised the public that the Act would not be applied by it to certain defined situations, it must have known that such an announcement would result in conduct in reliance on the announcement. In my opinion it was essentially unfair for the Board to retroactively repudiate its prior announcement.

Judge Pope, for the Court of Appeals for the Ninth Circuit, in the case of National Labor Relations Board v. Guy F. Atkinson Company, 195 F.2d 141, discussed the problem fully and ably and reached the conclusion which I would reach. The instant opinion says that Atkinson appears to have been overruled *sub silentio*. That conclusion may be justified. The problem, as the instant opinion shows, has been much litigated, and has been presented to the courts in a great variety of aspects, each with its own appeal to the Court's sense of fairness. It seems to me that, in the instant case, the problem is in its simplest and most readily soluble form. The Labor Board formally announces a renunciation of the exercise of a part of the jurisdiction which the statute gives it. It does so for the public good, for the purpose of better administering the remainder of its jurisdiction. It thereby leads employers, including the instant employer, to think that they may do what they and their betters had always done with impunity until recent times. When the employer acts upon the Board's announcement, the Board repudiates the announcement, asserts its jurisdiction and penalizes the employer. I think an agency of the Government should not act like that. I think its standard of fair play should be higher than that. I think the Board's former practice of limiting its activities without committing itself by the announcement of standards had in it an undesirable element of government by men and not by law. But I think the instant action of formally announcing a standard and then repudiating it adds an equally undesirable element, which, unlike the former one, is quite unnecessary, since it could be avoided by merely refraining from making retroactive announcements.

As to the hardship of leaving the discharged employees without relief, they are left only in the situation in which all the discharged employees of all of the employers over whom the Board might have, but has not and does not assert jurisdiction, find themselves.