The FRITO COMPANY, WESTERN DIVISION, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

RETAIL CLERKS UNION LOCAL 770 et al., Respondents.

Nos. 18350, 18400.

United States Court of Appeals Ninth Circuit.

April 7, 1964.

Hill, Farrer & Burrill and Ray L. Johnson, Jr., Los Angeles, Cal., for petitioner Frito Co.

Daniel R. Thompson, Washington, D. C., for amicus curiae American Bottlers of Carbonated Beverages (No. 18350).

Hill, Farrer & Burrill, Carl M. Gould, and Stanley E. Tobin, Los Angeles, Cal., for amicus curiae American Research Merchandising Institute (No. 18350).

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, Lee Modjeska, and Harvey Letter, Attys., N. L. R. B., Washington, D. C., for National Labor Relations Board.

Gilbert, Nissen & Irvin, Robert W. Gilbert and William B. Irvin, Beverly Hills, Cal., for respondent and intervenor Retail Clerks Union Locals 889, 1167, 1428 and 1442.

Arnold, Smith & Schwartz, George Arnold and Kenneth M. Schwartz, Los Angeles, Cal., for respondent and intervenor Retail Clerks Union Local 770.

McLaughlin & McLaughlin, Joseph M. McLaughlin, and Frederick A. Morgan, Los Angeles, Cal., for intervenor respondents Alpha Beta Food Markets, Inc., etc.

Before BARNES and JERTBERG, Circuit Judges, and STEPHENS, District Judge.

ALBERT LEE STEPHENS, Jr., District Judge:

Two cases have been consolidated, both arise from a decision and order of the National Labor Relations Board (hereinafter called the Board) issued against respondent Employers [1] and Unions [2] on August 24, 1962 and reported at 138 NLRB 27. One case, No. 18350, is before the Court on the petition of Frito Company, Western Division (hereinafter called Frito) for a review and modification of the Board's order insofar as it denies certain relief requested by Frito. The other case, No. 18400, is a petition by the Board for enforcement of its order. The respondent Employers and Unions in case No. 18400 have been permitted to intervene in case No. 18350. In addition to the parties named, briefs have been received from American Bottlers of Carbonated Beverages and the American Research Merchandising Institute as *amicus curiae*. This Court has jurisdiction under Sections 10(e) and (f) of the National Labor Relations Act,

---

1. The respondent Employers are Alpha Beta Food Markets, Inc., Food Giant Markets, Inc., Market Basket, Mayfair Markets, Ralph Grocery Co., Safeway Stores, Inc., Thriftimart, Inc., Von's Grocery Co., and Food Employer's Council, Inc.

2. The respondent Unions are Retail Clerks Union, Local 770; Retail Clerks Union, Local 899; Retail Clerks Union, Local 1167; Retail Clerks Union, Local 1428; and Retail Clerks Union, Local 1442.

as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq.)

For many years a dispute has existed between the respondent Unions and respondent Employers as to the latter's right to permit the driver-salesmen of market suppliers to perform certain functions on the store premises which they have been performing for over fifty years. The driver-salesmen service the supplier's product by stocking shelves, rotating merchandise and arranging advertising displays. It is the Unions' contention that these duties are the proper function of the retail clerks and that driver-salesmen should be restricted to delivery of the supplier's goods to the back door of the store. Many suppliers, including Frito, have traditionally employed driver-salesmen to perform these "on the premises" services.

The persistent efforts of the respondent Unions to establish their position culminated in the inclusion of certain terms in the collective bargaining contracts entered into with the respondent Employers in 1959 (and effective until March 31, 1964) which were designed to fulfill the objective stated above. Article 1 of the contracts contains the following terms:

"I B. *Work Performed*

"All work performed on the premises in the nature of work generally performed by retail clerks shall only be performed by employees of the bargaining unit as herein defined.

"C. *Subcontracting and Assignment of Work*

"1. The Employers shall not subcontract any work ordinarily performed by retail clerks in the stores or markets of the Employer's, and, further, any future work created by the Employer within the Employer's stores or markets which would ordinarily be performed by retail clerks, shall be performed only by members of the bargaining unit as herein set forth, except that such work may be subcontracted to an employer who is signatory to an agreement with the Union.

"2. Employer agrees not to assign or contract with any other union or person for work which is presently being performed by members of the bargaining unit represented by the Union.

"3. Any other work which is presently under specific contracts with the Teamsters, Culinary Workers, and Building Service Employees Unions shall not be affected by this Agreement, except as to any change which may result from an agreement of the Unions involved and the signatory Union and upon presentation to the Employer of bona fide proof thereof."

At various times between April 12 and September 7, 1960, representatives of the respondent Unions demanded that the Employers comply with the terms of the contracts. The Employers complied. As a result the Frito driver-salesmen were prohibited from performing any service in the selling area and their activity was restricted to delivery of merchandise to the market.

On October 12, 1960, Frito filed a charge with the Regional Director of the Board complaining that by requiring the Employers to enforce the terms of the contract, the respondent Unions had violated the National Labor Relations Act (hereinafter called the Act). The Board's General Counsel issued a complaint against the respondent Employers and Unions on December 16, 1960, Case No. 21–CE–11, alleging that the exclusion of Frito driver-salesmen pursuant to Sections B and C of Article I of the contract violated Section 8(e) of the Act.

Various locals of the Retail Clerks Union on March 28, 1961 brought charges against the Employers alleging corresponding violations of the Act. These cases were identified as Nos. 21–CE–16–1 and 21–CE–16–2 and were later consolidated with Case No. 21–CE–11.

The General Counsel then issued a Consolidated Amended Complaint which was subsequently amended on June 7, 1961,

the final complaint alleging that the violation of Section 8(e) of the Act was accomplished pursuant only to the "except" clauses of Sections C(1) and (3) of Article I of the contract. The Answer of the respondent Unions contained an offer to stipulate to an order prohibiting them from enforcing Sections C(1) and (3).

The respondent Employers in their Answer maintained that when excluding Frito driver-salesmen, they were enforcing Section B and all of Section C of Article I of the contract. It has consistently been the contention of the Employers and Frito that the validity of Section B and Section C(2) should be determined as well as C(1) and C(3), the sections whose validity had been put in issue by the complaint.

The trial examiner noted in his Report and Recommended Order of December 29, 1961 that the General Counsel called no witnesses at the hearing and rested his case on the pleadings. The only testimony presented consisted of that given by the manager or supervisor of three of the markets and this testimony was presented by Frito after the General Counsel had rested his case. The testimony was that no distinction was made between the various sections of Article I by either the Union business agents in requesting the Employers to enforce the contract, or by the managers of the Employers when giving notice to Frito driver-salesmen of their exclusion from the selling area. No more was said than that "the contract" did not permit Frito personnel in the selling area. Indeed, the only instance testified to in which a particular section of Article I was identified was one where Section B was stated to be the basis for excluding Frito employees.

The trial examiner concluded that the evidence did not support the complaint and recommended that the complaint be dismissed. He reasoned that nothing to the contrary appearing, it was consistent with the evidence to infer that Frito personnel were excluded pursuant to Section B, and that since the General Counsel expressly refused to deny the validity of Section B, the acts of respondent Employers and Unions were not in violation of Section 8(e) of the Act. On February 12, 1962, all parties filed exceptions to the trial examiner's recommendation and his finding that respondents had not engaged in unfair labor practices.

The Board reviewed the record and briefs and reached a decision contrary to the trial examiner's recommendation. The Board found Sections C(1) and (3) to be invalid. Furthermore, the Board held that the fact that respondent Unions referred to "the contract" rather than a specific clause and that the Employers may have intended to enforce Section B as well as C(1) and (3) does not warrant the conclusion that the allegations of the complaint have not been sustained. The Board held it unnecessary to prove that Frito employees were excluded solely pursuant to Sections C(1) and (3) and immaterial that a valid agreement may have been enforced if the parties were also enforcing an invalid agreement. Accordingly, a Decision and Order was published on August 24, 1962, directing respondents to cease and desist from maintaining, enforcing and giving effect to Sections C(1) and (3) of the collective bargaining contracts signed by them.

The result reached by the Board is not satisfactory to Frito or the Employers. Frito's employees can be excluded pursuant to Sections B and C(2) of the contract. Therefore, the Board's determination that Sections C(1) and (3) violate Section 8(e) of the Act is of no practical benefit to Frito or in solving the real issue.

The trial examiner held, and the Board agreed, that inasmuch as the General Counsel refused to place in issue the validity of Sections B and C(2), the trial examiner and the Board were precluded from considering that issue. To support this position, the Board cites Section 3(d) of the Act which provides in pertinent part:

"There shall be a General Counsel of the Board who shall be appointed by the President, by and with the advice and consent of the Senate, for a term of four years. The General

Counsel of the Board shall exercise general supervision over all attorneys employed by the Board (other than trial examiners and legal assistants to Board members) and over the officers and employees in the regional offices. He shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 10, and in respect of the prosecution of such complaints before the Board, and shall have such other duties as the Board may prescribe or as may be provided by law. * * * "

By enacting Section 3(d) Congress intended to effect a separation of the prosecuting and adjudicating functions within the Board. Haleston Drug Stores, Inc. v. N. L. R. B., 187 F.2d 418, 421 (9 Cir., 1951), cert. denied, 342 U.S. 815, 72 S.Ct. 29, 96 L.Ed. 616 (1951). It is the Board's position that to permit the Board to consider any issue which the General Counsel had decided to omit would be inconsistent with congressional intent and would nullify the final authority vested in the General Counsel to investigate charges, frame and issue a complaint and prosecute the same before the Board.

The Board has cited cases in other circuits where the charging party was not permitted to effect an amendment of the complaint for the purpose of injecting a violation which the General Counsel refused to charge in the complaint. International Union of Electrical, Radio and Machine Workers, AFL-CIO v. N. L. R. B., 110 U.S.App.D.C. 91, 289 F.2d 757 (1960); Piasecki Aircraft Corp. v. N. L. R. B., 280 F.2d 575 (3 Cir., 1960); Sailors' Union of the Pacific, 92 NLRB 547 (1950). These decisions are consistent with the fact that cases before the Board are not private litigation subject to the control of interested parties. The public interest governs the scope of the litigation. In this case the Board considers that the public interest in the scope of the litigation is represented exclusively by the General Counsel and that the Board itself is powerless to amend the complaint during or after the hearing with regard to an issue which the General Counsel has refused to bring to issue regardless of the Board's view of the controversy. The Board argues that the General Counsel has the exclusive right to determine what issues are to be considered and the Board is powerless to exercise its own discretion as to how best effectuate the public policy of the Act.

Petitioner argues that the Board erroneously considered itself bound by the General Counsel's refusal to place in issue Sections B and C(2) of the contract and that in so misconceiving its powers, the Board failed to make a full disposition of the case.

Authority for the Board to consider those clauses is said by petitioner to be the Board's amendatory power as set forth in Section 10(b) of the Act which provides in pertinent part:

"* * * Any such complaint may be amended by the member, agent, or agency conducting the hearing or the Board in its discretion at any time prior to the issuance of an order based thereon. * * * "

Section 10(b) remained a part of the Act when the function of the Board was changed by the enactment of Section 3(d) of the Act.

In N. L. R. B. v. Sterling Furniture Co., 202 F.2d 41 (9 Cir., 1953) this Court in response to the argument of the Board that an order could not be issued against an association which had voluntarily appeared, but had not by amendment of the complaint been made a party, stated that the Board's position was not based upon considerations having to do with vindication of the policy of the Act, but on assumed procedural difficulties which had no merit in light of the Board's amendatory powers. Such being the case, the Court held that the Board had a duty to amend where the policy of the Act would be effectuated and a full disposition of the cause was not otherwise possible.

The Board argues that the Sterling case, supra, is inapposite inasmuch as the General Counsel in that case approved the amendment of the complaint. There is, however, no reason to think the result would have been otherwise had the General Counsel not approved the amendment when consideration is given to the decision of this Court in Haleston Drug Stores, Inc. v. N. L. R. B., 187 F.2d 418 (9 Cir., 1957), cert. denied, 342 U.S. 815, 72 S.Ct. 29, 96 L.Ed. 616 (1951). In Haleston, the Board dismissed unfair labor practice complaints for policy reasons although the General Counsel had issued the complaints. This Court recognized that Section 3(d) of the Act conferred upon the General Counsel final authority to investigate charges, issue complaints and prosecute the same before the Board, but held that regardless of the position taken by the General Counsel, the Board still retained the power to dismiss on the grounds of effectuating the policy of the Act. In pertinent part this Court said:

"Section 10 of the original act, embracing six subdivisions, (a) to (f), dealt with the procedure for the prevention of unfair labor practices. So far as pertinent to the present inquiry its language was left undisturbed by the 1947 legislation. Nothing was added to the section suggestive of an intent on the part of Congress to circumscribe or curtail the Board's authority in respect of the prevention of such practices, or to render less flexible the unfair labor practice provisions of the original act. After a complaint has been issued by the general counsel it remains, as before, the duty and function of the Board to pass upon its jurisdiction, to determine whether unfair practices have been committed, what remedy would best effectuate the policies of the Act, and whether to seek enforcement of its order in the courts; and concededly it still adjudicates public rather than private rights."

The Board cannot fulfill its obligation to uphold the purposes of the Act if it conceives itself powerless to exercise an independent examination of the record of the case presented by the General Counsel.

The record shows that the General Counsel in the first complaint filed in No. 21–CE–11 alleged that all of Article I of the contract, including Sections B and C(2), is in violation of Section 8(e) of the Act. While the General Counsel excluded Sections B and C(2) as violative of the Act in the Consolidated Second Amended Complaint, the Answer of the respondent Employers denied that the acts alleged to be in violation of the Act were performed pursuant to Sections C(1) and C(3), but rather were predicated on Article I of the contract in its entirety, including Sections B and C(2). The only testimony elicited at the hearing supported the contention of the respondent Employers.

In Retail Clerks Union Local 770 et al. v. N. L. R. B., 111 U.S.App.D.C. 246, 296 F.2d 368 (1961), the Court concluded that Article I of the contract must be read as a whole and that Section B could not be read and enforced separately. Petitioner argues persuasively that absent a determination of the validity of Sections B and C(2), a full disposition of the cause is not possible.

There is no doubt that Congress intended to make the General Counsel's decision unreviewable by the Board. On the other hand, it is apparent that Congress intended that the Board should retain its judicial and policy making functions. President Truman vetoed the bill, pointing out in his veto message that the General Counsel "might usurp the Board's responsibility for establishing policy under the Act." We now have before us a case which lends credence to the concern expressed by President Truman.

It is now well settled that the General Counsel's decision to investigate a charge or issue a complaint is unreviewable by the Board. However, once the decision has been made to issue a complaint and

to prosecute it, the General Counsel has embarked upon the judicial process which is reserved to the Board. If the General Counsel can control this process, then the General Counsel can indeed usurp the Board's responsibility for establishing policy under the Act by simply withholding from the Board any issue which might precipitate a meaningful policy decision not in accord with the views of the General Counsel.

In passing, it should be observed that defining the issues which are posed by the opposing pleadings has always been regarded as a judicial function. It is also well recognized that each party has control of his own pleadings and that he can refuse to amend them. It is not surprising, therefore, to find that it is well established that the Board is not empowered to allow amendments to the complaint which the General Counsel has rejected. These are amendments proposed by other parties than the General Counsel and were it possible for them to impose amendments to the complaint, the final authority of the General Counsel to issue complaints would be circumvented. The authority to issue complaints is authority to determine what they shall contain. Prior to the amendment which is the subject of this discussion, the Board could allow amendments to the complaint because the Board was prosecutor and judge. To allow such an amendment was nothing more than to amend its own pleading.

The case of International Union of Electrical, Radio and Machine Workers, AFL-CIO v. N. L. R. B., supra, recognized the authority of the Board to disallow amendments approved by the General Counsel in a situation where the amendment was sought after the hearing had commenced. This also comports with general practice. See Federal Rules of Civil Procedure, Rule 15(a), for example. The case now before the Court could raise the question as to whether the

Board may disallow amendments by the General Counsel before the hearing commences, especially in light of the limitation that such amendments be "upon such terms as may be deemed just." The Court recognizes that a possible basis for decision might be that such amendments are addressed to the discretion of the Board in its judicial capacity. However, a decision on this ground seems unnecessary and the Court expressly refrains from deciding this point.

■ The General Counsel is also vested with final authority in respect to prosecution of the complaints he issues. Answers which seek to inject issues which the General Counsel has refused to present may be treated as unresponsive to the complaint and the unresponsive portion may be ignored as surplusage.[3] At the hearing in the case at bar, the averments of the answers were not treated as surplusage and evidence was admitted without objection. This evidence was either admitted to show that the labor agreement clauses referred to in the consolidated second amended complaint were not the source of the labor dispute (the version accepted by the trial examiner), or to put in issue the clauses which the General Counsel had eliminated by amendment. The Board seems to have adopted the latter view, but concluded that it could not consider them in issue without trespassing upon the authority reserved by law to the General Counsel. This view does not consider the possibility of allowing an amendment to conform to proof.

■ Section 101.10 of the Code of Federal Regulations Title 29–Labor, which appears in the appendix to Title 29, provides in pertinent part:

"The rules of evidence applicable in the District Courts of the United States under the Rules of Civil Procedure adopted by the Supreme Court

---

3. In N.L.R.B. v. Bar-Brook Mfg. Co., 220 F.2d 832 (5th Cir., 1953), the Court approved the Board's refusal to consider an issue which the employer attempted to raise in a "counterclaim" to the complaint issued by the General Counsel. The General Counsel had refused to include the issue in his complaint.

are, so far as practicable, controlling."

The Federal Rules of Civil Procedure are not rules of evidence, but of procedure pursuant to which evidence may be taken. The provision noted must be taken to mean that the procedure to be followed in hearings before the Board shall be controlled as far as practicable by the Federal Rules of Civil Procedure. Of course it must be recognized that the separation of the functions of prosecutor and adjudicator which has been established by Congress cannot be changed by action of the Board in adopting rules of procedure, but it will be apparent from what follows below that this is not suggested.

Turning to the Federal Rules of Civil Procedure, Rule 15(b) seems applicable to the case at hand:

"(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects *as if they had been raised in* the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

■ Once having elected to prosecute a complaint before the Board, the General Counsel is cast in the role of prosecutor in a judicial proceeding. His authority as a prosecutor is not reviewable by the Board, but this authority does not extend to control of the proceeding itself. He cannot limit the scope of the decision which may be rendered upon the evidence adduced. It is a judicial function to permit an amendment of the complaint to conform to proof admitted without objection. The matter of allowance of such an amendment is addressed to the discretion of the court.

■ The proof having been admitted without objection, what is to be done with it is no longer a part of the prosecution of the cause. A ruling by the Board adverse to the wishes of the General Counsel is not a review of a decision of the General Counsel. In the prosecution of the complaint he could have objected to the introduction of the evidence. He did not do so and he thereby consented to the introduction of the issue to which the evidence was addressed. The trial examiner and the Board were then free to consider the evidence and to exercise judicial discretion as to whether to permit amendment to conform to proof.

■ On the matter of amendment to conform to proof admitted in the record, especially if amendment may be necessary to enable the Board to effectively discharge its duty to declare policy, we hold that the Board does have the authority to allow an amendment over the objection of the General Counsel and that this is a judicial function rather than a review of a decision of the General Counsel in the course of the discharge of the duties of a prosecutor over which he has final authority.

The Board could adopt the view of its trial examiner, it could dismiss the case for public policy reasons, or it could render a decision based upon the issues actually tried without ordering amendment, or it could order amendment to conform to proof or conduct further hearings in the premises.

The cause is hereby remanded to the Board for further proceedings in conformity with the views expressed in this opinion.