## SHIRK, TRUSTEE, *v.* HUPP.

[No. 20,725.   Filed June 22, 1906.   Rehearing denied December
18, 1906.]

1.   PLEADING.—*Complaint.*—*Theory.*—*Municipal Corporations.*—
*Street Assessments.*—*Bonds.*—Whether a suit to enforce the
lien of a contractor for street improvements is based upon the
assessment made therefor or upon the bonds issued in payment
thereof, as provided by §3623f Burns 1901, Acts 1901, p. 534,
§6, is immaterial, such bonds being simply an evidence of such
indebtedness.   p. 510.

2.   SAME.—*Motion to Make Specific.*—Where doubt exists as to
the theory of plaintiff's complaint, a motion to make more
specific is the proper remedy.   p. 511.

3.   MUNICIPAL CORPORATIONS.—*Street Assessments.*—*Collection.*
—*Council's Right to Prescribe Method.*—An order of the city
council that street assessments shall be collected as taxes are
collected, is surplusage, since §3623f Burns 1901, Acts 1901,
p. 534, §6, specifically prescribes the method of collection.
p. 511.

4.   SAME.—*Street Assessments.*—*How Questioned.*—Under §3623d
Burns 1901, Acts 1901, p. 534, §4, defects in street assessments
can be remedied only by a direct appeal to the circuit court
from the order fixing same.   p. 512.

5.   SAME.—*Street Improvements.*—*Contracts.*—A general order
for the improvement of a certain street in accordance with
certain specifications is complied with when such street is made
to conform to such specifications; and it is not necessary to
change any part of such street that already conforms to such
specifications.   p. 512.

6.   SAME.—*Street Assessments.*—*How Fixed.*—*Statutes.*—Under
§3623c Burns 1901, Acts 1901, p. 534, §3, street assessments
are made on the theory of special benefits received; and it is
not unlawful to assess the cost of improving the east side of a
street to frontagers upon such side, if they alone received spe-
cial benefits therefrom.   p. 513.

7.   SAME.—*Street Assessments.*—*Collection of.*—*Attorneys' Fees.*
—*Constitutional Law.*—Section 3623f Burns 1901, Acts 1901,
p. 534, §6, providing for the recovery of attorneys' fees in cases
of foreclosure of street improvement liens, is constitutional.
p. 514.

8. MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Contracts.*—*Notice.*—Where a city council adopted a resolution that it would receive bids for a street improvement "up to 6 o'clock, October 30," and ordered its clerk to publish notice of the letting "for three weeks before October 6," and the clerk published a notice for three successive weeks, that bids would be received up to "5 o'clock, October 30," the first of which was published on October 1, and the last, on October 22, such notice is a sufficient compliance with the statute (§3623a Burns 1901). p. 514.

9. APPEAL AND ERROR.—*Briefs.*—*Striking from Files.*—*Unprofessional Language.*—Briefs containing unprofessional language will be stricken from the files. p. 515.

From Cass Circuit Court; *David D. Fickle,* Judge.

Suit by William Hupp against Elbert W. Shirk, trustee. From a decree for plaintiff, defendant appeals. *Affirmed.*

*George E. Ross,* for appellant.

*Nelson, Myers & Yarlott,* for appellee.

HADLEY, J.—Appellee, as the contractor, instituted this suit to foreclose a lien against the real estate of appellant for the improvement of a street in the city of Logansport under the act of 1901 (Acts 1901, p. 534, §3623a *et seq.* Burns 1901). A demurrer to the complaint for insufficiency of facts was overruled, and the issue closed by a general denial. There was a trial by the court, and special findings and conclusions of law in favor of appellee. Appellant's motion for a new trial, and to modify the decree were overruled. Error is assigned on all adverse rulings.

Appellant's first objection to the complaint is that it is so drawn as to admit of two theories—that it is uncertain whether the plaintiff bases his action on the bonds issued by the city in anticipation of the assessments for the improvement, or on the lien created by the assessment of benefits against the defendant's property. It is entirely immaterial whether one theory or the other is intended by the plaintiff. He may sue upon the assessment and rely upon his statutory lien, or he may sue upon his bonds, which are nothing more nor less than evidence of the

indebtedness, and pursue the same statutory lien. §3623f Burns 1901, Acts 1901, p. 534, §6; *Scott* v. *Hayes* (1904), 162 Ind. 548.

2. Besides, if appellant was in doubt about how to answer, or how to present his defense, that doubt might have been removed by a timely motion to make more specific.

A further objection to the complaint is that it shows upon its face that the common council in its order of assessment provided that it should be collected as taxes are collected, and, having so provided, collection by foreclosure is contrary to the terms of the order, and therefore forbidden. If the council did so provide in the order, it was surplusage and without legal significance. The duty of the council ended with the making of the assessment. That body had nothing to do with the collection, or with the providing of a mode of collection. The legislature (§3623f, *supra*), specifically points out how collection of such assessments may be accomplished, as follows: "Such delinquent instalments shall be collected in the same manner that delinquent taxes are collected, or may be collected by foreclosure of the lien thereof in any court of competent jurisdiction, as a mortgage is foreclosed." The owner of the lien was entitled to choose between these remedies. We perceive no infirmity in the complaint and the demurrer thereto was properly overruled.

The initial resolution adopted by the common council declared generally that there existed a necessity for the improvement of North Fifth street between Linden avenue and Miami street, by grading and graveling the roadway forty-six feet wide and curbing the gutters four and one-half feet wide with boulders, the street to be brought to a proper subgrade and graveled to a depth of eighteen inches in the center and sloped to six inches at the gutters, all to be done in accordance with specifications and drawings on file in the office of the city engineer, in conformity to the

established city grade, and under the supervision of the city engineer.

It is shown by the findings that said improvement was accomplished by appellee under the direction of the city engineer and in accordance with the order and contract, and that in the performance all the work actually done by appellee, as contractor, was on the east half of North Fifth street between Linden avenue and Miami street; that the west half of said street had been, before the commencement of these proceedings, improved in accordance with said specifications, and paid for in full by the property owners on the west side; that the total assessment under these proceedings was laid against the property on the east side. Under these findings appellant insists that the court's conclusions of law in favor of appellee were erroneous (1) because the work done and sued for was not the work provided for by the ordinance or declaratory resolution, and (2) because the common council had no power to assess the total cost of the improvement, as benefits, to abutters on the east side.

By §3623d Burns 1901, Acts 1901, p. 534, §4, when an assessment is once made by the common council its validity cannot be questioned, except by a direct appeal to the circuit court. This is quite a different action, but, since counsel have earnestly argued the questions last above stated, we have deemed it proper to consider them.

(1) The resolution in general terms called for the improvement of North Fifth street between Linden avenue and Miami street. The fair implication of the language is that the full width and length of the street should be artificially constructed in conformity to the "specifications and drawings for the doing of said improvement on file in the engineer's office." It is not specified that every part of the street should be excavated and then refilled with gravel, eighteen inches in the center

and sloped to six inches at the gutter. The resolution was satisfied, if, when the improvement was completed, every part of the street, to its full width and length, was found to be in a condition strictly in accordance with the specifications referred to, and that formed the basis of the contract. The law does not indulge in such folly as would demand a destruction of a part of the street that might be found in the condition required, without more substantial reason than that of imposing upon the contractor the burden of restoring it. The bids were received and contract let for so much per cubic yard for gravel, and so much per linear foot for bouldering the gutter, and if, under the guidance of the city engineer, as provided by the contract, it was found that the west half of the street was already satisfactorily improved, and that its condition in all ways met the requirements of the improvement order, we see no reason why an improvement of the east half, and the bringing of it to the same condition as the west half, did not accomplish an improvement of the whole street, and a substantial compliance with the resolution.

(2) In considering the fact that the cost of the improvement was all assessed as benefits against property on the east side of the street, it should be borne in mind 6. that this proceeding is under the act of 1901, *supra*, and the assessment of the cost is not made by the old front-foot rule, but upon the principle of actual, special benefits received. The act of 1901 applies only to cities "not operating under special charters." Logansport is a city of this class. The act provides (Acts 1901, p. 534, §3, §3623c Burns 1901) that after the improvement has been completed, and the costs thereof ascertained, the city engineer shall report these facts to the common council, which shall refer the report to the city commissioners, who "shall meet at the time and place fixed by the common council and shall proceed to view the lots, lands and parcels of ground affected by said improvement, * * * and assess

the costs of said improvement upon the property *benefited thereby in proportion to the benefits derived therefrom, but not in excess of such benefits."* (Our italics.) If the total special benefits thus ascertained are less than the cost of the improvement, the remainder shall be paid from the general funds of the city. Under said act the taxing district is limited only by accruing special benefits. All abutting lots and lands are not necessarily assessable; neither are all assessments necessarily confined to abutting property. The theory of this statute is to seek out the lots and lands that have received a particular and special benefit from the improvement, not common to nor shared by the other inhabitants of the city, and against such property lodge assessments of cost to the extent of such peculiar benefits, when necessary. And *if it turns out, for any reason, that the special benefits resulting from a street improvement all fall on one side of the street, that side alone is assessable.* The court did not, therefore, for this reason, err in holding the assessment valid.

The statute (§3623f, *supra*) provides for, and the court allowed plaintiff's attorney, a reasonable fee in the foreclosure decree. This, appellant claims was a violation of the Constitution. This court has decided to the contrary and we still adhere to the opinion heretofore announced. *Dowell* v. *Talbot Pav. Co.* (1894), 138 Ind. 675, 688; *Pittsburgh, etc., R. Co.* v. *Fish* (1902), 158 Ind. 525; *Judy* v. *Thompson* (1901), 156 Ind. 533.

Section one of the statute provides that the common council shall give notice of the letting of such contracts by three weeks' publication in a newspaper of general circulation published within the city. Appellant claims that the notice given in this case was insufficient, and the letting of the contract illegal and void. In the declaratory resolution the common council fixed, as matter of record, that it would receive bids for the work up to 6 o'clock, October 30, 1901. An order to the clerk

directed him to cause notice to be published for the letting of the contract for three weeks before (as appears of record) October 6, 1901. The record further discloses that the city clerk proceeded to and did give notice pursuant to the order, that bids would be received up to 5 o'clock, October 30, 1901, the first of which publication was on October 1, 1901, and the last, on October 22, 1901.

Appellant argues that the notice given by the city clerk under the direction of the council is no notice at all, by the council, within the meaning of the statute, because not in accordance with the direction of the council. What instructions the clerk received from the council concerning notice is of little consequence. The essential things for the council to do with respect to the time for the letting of the contract were: (1) To fix the time, upon their record, for the letting of the contract; (2) to cause notice of the time and place of said letting to be given by publication for three weeks in a newspaper of general circulation in the city. As exhibited by the record, the time was fixed and the notice actually given as required by the statute, and the public thus afforded a fair and equal chance to bid, and in this respect it must be held to be a substantial compliance with the statute.

There are a number of other unimportant questions, chiefly relating to the sufficiency of the evidence to sustain particular findings, and to the admission and exclusion of evidence, each of which we have examined, and find no reversible error.

Judgment affirmed.

## ON PETITION FOR REHEARING.

PER CURIAM.—For discourteous and unprofessional language used by appellant's counsel in his brief on petition for rehearing, said brief is stricken from the files of this court, and the petition for a rehearing overruled.