**NATIONAL LABOR RELATIONS BOARD**

v.

**NATIONAL GAS CO.**

No. 14739.

United States Court of Appeals Eighth Circuit.

Aug. 10, 1954.

Rosanna A. Blake, Attorney N. L. R. B., Washington, D. C. (George J. Bott,

General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. Gen. Counsel, and Samuel M. Singer, Attorney N. L. R. B., Washington, D. C., on the brief), for petitioner.

Milton O. Talent, St. Louis, Mo. (Robert A. Dempster, Sikeston, Mo., on the brief), for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

Pursuant to Section 10(e) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(e), the National Labor Relations Board has petitioned this court for enforcement of its order entered May 27, 1952, against respondent National Gas Company. By the terms of said order respondent is directed to:

"1. Cease and desist from:

"a. Discouraging membership in United Gas, Coke and Chemical Workers, C.I.O., or any other labor organization * * *.

"b. Refusing to bargain collectively * * *.

"c. Any bargaining * * * with individual employees in the unit aforesaid * * *.

"d. Suggesting to employees that they abandon their statutory collective bargaining representative * * *.

"e. In any other manner interfering with, restraining, or coercing its employees in the exercise of their right to self-organization * * *.

"2. Take the following affirmative action:

"a. Offer to [certain named individuals] immediate and full reinstatement * * *.

"b. Make whole [certain named individuals] for any loss of pay * * *.

"d. Upon request, bargain collectively with United Gas, Coke and Chemical workers * * *."

(Parts c, e, and f of the Board's order relate to furnishing records, posting notices, etc.).

Respondent is engaged in the sale of bottled gas and gas appliances at Sikeston, Hayti, and Malden, Missouri, and the surrounding territories. Pursuant to a commerce stipulation entered into by the parties herein, it was shown that during the period April 30, 1949--April 30, 1950, respondent purchased raw materials, equipment and supplies from points outside of Missouri in the amount of $150,000. Under then existing rules adopted by the Board, this constituted 30% of the minimum amount of direct inflow necessary before the Board would assert jurisdiction. During the same period, respondent sold and delivered gas in the amount of $31,242.94 to forty-four cotton gins located in Missouri, each of which purchased, ginned, and sold cotton in excess of $50,000 annually. After ginning, the gins shipped the cotton to compresses located in Missouri and received negotiable warehouse receipts in payment therefor. These warehouse receipts were then sold to various buyers, either brokers or mill representatives, who directed delivery from the compresses. It is admitted by the parties that title to the cotton might pass through several buyers, but eventually 95% to 98% is shipped directly from the compresses to points outside of Missouri. In addition, respondent supplies gas to six other "agent" cotton gins in Missouri, each of whose annual sales exceed $50,000. These gins handle the cotton in the same way as stated above, except that they do not purchase the cotton from the farmers but merely remit the sale price after deducting ginning charges. The fifty gins mentioned, plus other consumers of respondent, each of which annually handle or process more than $25,000 worth of goods destined for out-of-state shipment, were furnished gas in the amount of $41,015.95 by respondent during the stipulated period. Under formula promulgated by the Board for asserting jurisdiction, this represented approximately 82% of the $50,000 minimum indirect outflow requirement for local enterprises furnishing materials or services to businesses engaged in inter-

state commerce. By adding the 30% direct inflow to the 82% indirect outflow, the 100% requirement under the Board policy for asserting jurisdiction was met and the Board asserted jurisdiction over a labor dispute at respondent's plants.

The Board's petition for enforcement was filed in this court on November 17, 1952, but due to the delay occasioned by a remand of the case for the purpose of taking further evidence on the question of the union's compliance with the filing provisions of the National Labor Relations Act, 29 U.S.C.A. § 159(f), (g), and (h), the case was not argued until the May, 1954, session of this court. In the meantime and on November 30, 1953, the Board handed down its decision in the Brooks Wood Products case, 107 N.L.R.B. 71, in which it declined to assert jurisdiction under a similar set of circumstances as disclosed here, and in which it expressly overruled its decision asserting jurisdiction in this case. After the decision in the Brooks case, however, the Board determined (by divided vote) to proceed to obtain an order of enforcement in this case.

On April 16, 1954, respondent filed a Motion to Amend Answer in which it charged that the action of the Board in undertaking to obtain enforcement of its order in this case was unreasonable, arbitrary and capricious and deprived respondent of due process of law. That motion was argued before us at the same time the Board's petition for enforcement was heard on the merits. Discussion of the merits of the case is unnecessary in view of our decision on respondent's motion.

■ The Board is asking this court to enforce an order which it entered upon a state of facts which the Board has later expressly held to be insufficient to justify its taking or exercising jurisdiction under the statute from which its powers are derived. The Board held on full consideration in the Brooks case, wherein the facts relative to its jurisdiction are indistinguishable from the facts in the present case, that it would not effectuate the policies of the National Labor Relations Act to assert jurisdiction therein, and further held that the decision supporting the action it had taken in this case should be overruled. Embodying that decision, and complementary thereto, the Board on June 30, 1954, issued new regulations which materially changed and delimited the scope of its jurisdiction.[1] It is conceded by counsel for the Board that respondent does not now come within the scope of the Board's present jurisdictional requirements.

1. The changes announced by the Board on June 30, 1954, were as follows:

a. The Board increased the amount of direct outflow of interstate business required to bring a company under its jurisdiction, from $25,000 a year to $50,000 a year.

b. The Board increased the amount of goods or services that must be supplied to interstate companies to bring the supplier under the Board's jurisdiction from $50,000 a year to $100,000 a year.

c. The Board established a requirement that the goods supplied by firms under paragraph (b) above ultimately go outside the state or the services supplied be part of the stream of interstate commerce. (There was no such requirement in the former standards.)

d. The Board established a requirement that intra-state trucking companies and similar firms which are "links in interstate commerce" do at least $100,000 a year business for other interstate firms in order to come under Board jurisdiction. (The former standards did not contain any dollar criterion in this category.)

e. Jurisdiction will not be exercised over general or public office buildings merely because they have tenants over which the Board exercises jurisdiction.

f. A franchise from a national enterprise will not be sufficient in and of itself to bring a company under the Board's jurisdiction.

g. The Board abolished the "combination category". Jurisdiction will not be determined by combining the percentages which a company has in each of the dollar volume categories.

The Board announced that these changes in its jurisdictional standards will take effect immediately. The new standards will be applied to pending cases as well as those filed hereafter.

Since our duty is to apply the law in its present form, and not as it existed at the time of the decision and order below, Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327; Carpenter v. Wabash R. Co., 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558; Schaff v. R. W. Claxton, Inc., 1944, 79 U.S.App. D.C. 207, 144 F.2d 532; Schilder v. Gusik, 6 Cir., 1950, 180 F.2d 662, we must decline to grant the petition for enforcement.

■ The Board, it seems to us, is in the untenable position of asking this court to proceed in a case in which it has precluded itself from proceeding, both by express decision and by the adoption and promulgation of self-limiting rules. An order of enforcement, if granted by this court, would require further action on the part of the Board and respondent employer. But the Board, under its decision that its new regulations shall apply to pending as well as future cases, has specifically denied its jurisdiction over respondent and other employers similarly situated. It could not consistently with the rules it has adopted and published exert its powers to effectuate an enforcement order of this court against the respondent. Such an order and any action of the Board in respect to it would present an arbitrary and capricious discrimination against respondent.

The Board urges that the case of N. L. R. B. v. Red Rock Co., 5 Cir., 1951, 187 F.2d 76, 78, is controlling here. In that case the court held, "The fact that by a self-denying rule or order made since this complaint was filed and order entered, the Board has set limits to the exercise in the future of the jurisdiction it possesses is not a matter of which respondent may avail." But the court's opinion does not disclose that the Board decision which was there before the court had been expressly overruled by the Board. In this case the Board decision before us was considered and overruled during the pendency of the action here. Further, it does not appear in the Red Rock Co. case whether the new jurisdic-

tional rules adopted by the Board were intended to apply to pending cases. In view of the court's statement that, "* * * the Board has set limits to the exercise *in the future* of the jurisdiction it possesses * * *", (emphasis added) it would seem that they were not. For these reasons we feel that the Red Rock Co. case is not controlling here.

Respondent's Motion to Amend Answer is granted and the Board's petition for enforcement is denied.