**MEDICAL DISPOSAL SERVICES, INC., Appellant–Plaintiff,**

v.

**INDIANA DEPARTMENT OF ENVI-RONMENTAL MANAGEMENT, Kathy Prosser, Commissioner of the Indiana Department of Environmental Management and John Hale, Chief Enforcement of the Indiana Department of Environmental Management, Appellee–Defendant.**

No. 45A03–9510–CV–331.

Court of Appeals of Indiana.

Aug. 26, 1996.

Rehearing Denied Oct. 24, 1996.

Kenneth D. Reed, Christopher R. Karsten, Abrahamson, Reed & Adley, Hammond, for appellant.

Pamela Carter, Attorney General, Timothy J. Junk, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

STATON, Judge.

Medical Disposal Services, Inc. ("Medical Disposal") appeals from the trial court's grant of summary judgment in favor of the Indiana Department of Environmental Management; its Commissioner, Kathy Prosser; and its Chief Enforcement Officer, John Hale (collectively "the IDEM"). Medical Disposal raises two issues for appellate review which we consolidate into one and restate as: whether the trial court erred in granting summary judgment to the IDEM.

We affirm.

The undisputed facts reveal that Medical Disposal is an Illinois corporation duly admitted to do business in Indiana. Since 1989, Medical Disposal has collected and transported medical waste from Indiana to a medical waste facility in Grand Rapids, Michigan where the waste is disposed of by incineration. Medical Disposal operates small delivery trucks which retrieve medical waste from numerous health care providers and health care facilities in northwest Indiana. These trucks then transport the contained waste to a central site, leased by Medical Disposal, located at the IMK Truckstop in Hammond, Indiana. There, the containers are removed from the smaller trucks and loaded into larger tractor trailers which then haul the waste to the incinerator facility in Michigan.

In March 1994, the IDEM notified Medical Disposal that an inspection of the IMK Truckstop revealed that by transferring medical waste, Medical Disposal was operating a solid waste transfer station without acquiring a solid waste processing permit in violation of Indiana law. The IDEM ordered Medical Disposal to cease the transfer of the medical waste until a valid permit was obtained.

In May 1994, Medical Disposal filed a complaint for a declaratory judgment, alleging that it was not in violation of the Indiana Environmental Management Act or any State solid waste regulations as its transport of medical waste did not include the transfer of solid waste and thus, was not subject to the permit requirements.[1]

Thereafter, Medical Disposal and the IDEM filed motions for summary judgment. Following a hearing, the trial court entered conclusions of law and granted summary judgment in favor of the IDEM. In so doing, the trial court found that "... the medical waste handle[d] and transported by Medical Disposal, Inc., fits within the applicable statutory definition of 'solid waste' found at I.C. 13–7–1–22, as well as within the regulatory definition of solid waste found at 329 I.A.C. 2–2–1(12)." Record at 381. Medical Disposal now appeals.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact, and it is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371

---

1. Medical Disposal subsequently obtained a temporary restraining order prohibiting the IDEM from interfering with its operation until the matter was resolved by the courts.

(Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

■ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

■ Medical Disposal presents several issues of statutory construction under Indiana's Environmental Management Statute.[2] In such cases, we construe a statute so as to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. *State v. Windy City Fireworks, Inc.*, 600 N.E.2d 555, 558 (Ind.Ct.App.1992), *adopted on transfer,* 608 N.E.2d 699 (Ind.1993). We presume that the legislature intended that the statutory language be applied in a logical manner consistent with the statute's underlying policy and goals. *Detterline v. Bonaventura,* 465 N.E.2d 215, 218 (Ind.Ct.App.1984), *trans. denied.* We presume words appearing in the statute were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Indiana Dept. of Human Services v. Firth,* 590 N.E.2d 154, 157 (Ind.Ct.App.1992), *trans. denied.*

First, Medical Disposal contends that the trial court erred in finding that it was subject to the Environmental Management Statute. Medical Disposal argues that the trial court's application of the Environmental Management Statute is erroneous because its transport of infectious waste is not regulated by the IDEM but wholly regulated by the Indiana Department of Health pursuant to IND.CODE § 16–41–16 (1993) which addresses the treatment of infectious waste.

Specifically, Medical Disposal states, "[U]nlike solid waste which is regulated primarily at the collection, and disposal stages, infectious waste is regulated at its precollection inception" and thus, is wholly regulated by the Department of Health. Appellant's Br. at 24. Medical Disposal further argues that because of the "thorough regulation of infectious waste" under IC 16–41–16, the Department of Health rules are controlling and there is no need for further regulation concerning infectious waste processing facilities or transfer stations. *Id.* at 25.

A review of IC 16–41–16 reveals that chapter 16 specifically "applies to persons and facilities that *handle* infectious waste" including hospitals, ambulatory surgical facilities, medical laboratories, diagnostic laboratories, blood centers, pharmaceutical companies, academic research laboratories, industrial research laboratories, health facilities, offices of health care providers, diet or health care clinics, offices of veterinarians, veterinary hospitals, emergency medical services providers, and mortuaries. *See* IC 16–41–16–1 (emphasis added). The statute provides for the on-site treatment of waste before the waste is placed in an area that is not secure or sent for final disposal. IC 16–41–16–7. The statute also states that before adopting rules to govern those facilities handling infectious waste, the department shall consider guidelines of the state department of environmental management. IC 16–41–16–8.

■ While chapter 16 specifically deals with the handling of infectious waste at those health care or research facilities set forth in IC 16–41–16–1, it does not address the transport of such waste after it leaves these facilities. Moreover, as a transporter of medical waste, Medical Disposal's function is different from those entities set forth in the statute. Accordingly, we conclude that Medical Disposal's transport of the infectious waste is not confined to IC 16–41–16 and is subject to the Environmental Management Statute. To determine otherwise would leave the trans-

2. *See* IND.CODE § 13–7–1 *et seq.* (1993).

port of the infectious waste unregulated and despite Medical Disposal's argument to the contrary, we do not believe that such regulation is unnecessary.

Medical Disposal next argues the trial court erred in finding that the infectious waste it transports is solid waste subject to the Environmental Management Statute. IND.CODE § 13–7–1–22 (1993) defines solid waste as:

> ... any garbage, refuse, sludge from a waste treatment plant, sludge from a water supply treatment plant, sludge from an air pollution control facility, or other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, or agricultural operations or from community activities....

*See also* IND.ADMIN.CODE tit. 329, r. 2–2–1(12)(1996).[3]

IND.CODE § 13–7–1–12 (1993) defines hazardous waste as:

> ... a solid waste or combination of solid waste that, because of its quantity, concentration, or physical, chemical, or *infectious* characteristics, may:
>
> (1) cause or significantly contribute to an increase in mortality or increase in serious irreversible, or incapacitating reversible, illness; or
>
> (2) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of, or otherwise managed.

(Emphasis added).

IND.ADMIN.CODE tit. 329, r. 11–2–39, has subsequently been added to broaden the definition of solid waste to mean "other discarded material; including ash residue, commercial waste, construction/demolition waste, hazardous waste, household waste, *infectious waste,* liquid waste, special waste, municipal solid waste, regulated hazardous waste, residential and nonresidential waste and any solid, liquid, semisolid, or contained gaseous material." *See* Ind.Reg., vol. 19, No. 8 at

1931 (May 1, 1996) (final rule replacing IND.ADMIN.CODE tit. 329, r. 2) (emphasis added).

 While it is true that where the legislature amends a statute, it is presumed that it intended to change its meaning, this presumption will not apply if it appears that the amendment was made only to express the original intention of the legislature more clearly. *National Salvage & Service Corp. v. Comm'r of the Ind. Dep't of Envtl. Mgt.,* 571 N.E.2d 548, 555 (Ind.Ct.App.1991), *trans. denied, cert. denied,* 506 U.S. 871, 113 S.Ct. 205, 121 L.Ed.2d 146 (1992). The proposed inclusion of infectious waste and other waste materials is indicative of the legislature's intent not to narrow the definition of solid waste so that a waste management facility may avoid solid waste regulations. This is consistent with the purpose of the Environmental Management Statute, "... to protect, and enhance the quality of the environment so that, to the extent possible, future generations will be ensured clean air ..." IC 13–7–1–1. As a result, we conclude that infectious waste is solid waste under the statute and subject to the following regulations.

IND.CODE § 13–7–4–1(6) (1993) provides in pertinent part:

> No person may ... [c]onstruct, install, operate, conduct, or modify, without prior approval of the department, any equipment or facility of any type which may cause or contribute to pollution or which may be designed to prevent pollution....

Correspondingly, any person who disposes of solid waste or operates a solid waste processing facility must have a solid waste facility permit. IND.ADMIN.CODE tit. 329, r. 2–8–1(a) (1996) (replaced by IAC, tit. 329, r. 11–9–1(a), *see* Ind.Reg., Vol. 19, no. 8 at 1936 (May 1, 1996)).

A solid waste processing facility "means a solid waste facility upon which is located a ... transfer station ..." IND.ADMIN.CODE tit. 329, r. 2–2–1(55) (1996) (replaced by IAC tit. 329, r. 11–2–43, *see* Ind.Reg., vol. 19, no. 8 at 1932 (May 1, 1996)). A transfer station is a

---

**3.** IND.ADMIN.CODE tit. 329, r. 2 has been repealed and replaced by IND.ADMIN.CODE tit. 329, r. 10–12.

*See* Ind. Reg., vol. 19, No. 8 (May 1, 1996).

facility where solid waste is transferred from a vehicle or a container to another vehicle or container for transportation. IC 13–7–1–24.5 and IAC, tit. 329, r. 11–2–47, *see* Ind.Reg., Vol. 19, no. 8 at 1933 (May 1, 1996).

■ Accordingly, pursuant to these statutes and regulations, by transferring the medical waste from one vehicle to another at the IMK Truckstop, Medical Disposal was operating a transfer station as defined by IC 13–7–1–24.5. Because a transfer station was a solid waste processing facility under IAC tit. 329, r. 2–2–1(55), Medical Disposal was required to obtain a permit pursuant to IAC tit. 329, r. 2–8–1(a). *See also National Salvage, supra,* at 554–55 (warehouse constituted solid waste facility subject to permit requirements based upon transfer of solid waste from one vehicle or railroad container through warehouse to another vehicle or truck container for transportation).

Finally, Medical Disposal argues that it is not subject to these requirements of the Environmental Management Statute, IC 13–7, because infectious waste is specifically excluded from the definition of solid waste pursuant to the Solid Waste Management Statute, IND.CODE § 13–9.5–1–26 (1993). IC 13–9.5–1–26 provides:

> "Solid waste" has the meaning set forth in IC 13–7–1–22, except that the term does not include the following:
> (1) Any waste that is regulated under IC 13–7–8.5.
> (2) Any infectious waste (as defined in IC 16–41–16–4) [4] that is disposed of at an in-

cinerator permitted under rules adopted by the solid waste management board to dispose of infectious waste.

■ When considering two or more statutes relating to the same general subject matter, we read the statute *in pari materia,* and we try to construe them together so as to produce a harmonious system. *Althaus v. Evansville Courier Co.,* 615 N.E.2d 441, 444 (Ind.Ct.App.1993), *reh. denied.* When one statute covers a particular subject in general terms and another statute covers the same subject in a more detailed or specific manner, then we first attempt to harmonize the statutes, but if the statutes are irreconcilably conflicting the more detailed statute prevails as to the subject matter it covers. *Id.*

■ Medical Disposal relies upon this rule of construction to argue that because Article 9.5 deals with more specific subject matter than Article 7, the exclusion of infectious waste under Article 9.5 should prevail. While we acknowledge that Article 9.5 could be deemed to cover waste management more specifically than Article 7, Article 9.5 is only applicable in the context of the establishment and function of solid waste management districts consisting of counties throughout the state.[5] The infectious waste exclusion, IC 13–9.5–1–26, falls under Article 9.5, Solid Waste Management, and IC 13–9.5–1–1 provides that the definitions set forth in chapter 1 apply throughout Article 9.5 only. Thus, the exclusion of infectious waste from the definition of solid waste applies only in Arti-

---

4. IND.CODE § 16–41–16–4 (1993) states:
(a) As used in this chapter, "infectious waste" means waste that epidemiologic evidence indicates is capable of transmitting a dangerous communicable disease (as defined by rule adopted under IC 16–41–2–1).
(b) The term includes the following:
(1) Pathological wastes.
(2) Biological cultures and associated biologicals.
(3) Contaminated sharps.
(4) Infectious agent stock and associated biologicals.
(5) Blood and blood products in liquid or semiliquid form.
(6) Laboratory animal carcasses, body parts, and bedding.
(7) Wastes (as described under Section 8 of this chapter).

5. Included in this article are: (1) chapter 2 which requires each county in the state to join a solid waste management district; (2) chapter 3 which involves the adoption of a state solid waste management plan; (3) chapter 4 which involves the adoption of a district solid waste management plan; (4) chapter 5 which sets forth state solid waste management fees; (5) chapter 6 which sets forth county solid waste management fees; (6) chapter 7 which sets forth final disposal fees; (7) chapter 8 which allows boards of solid waste management districts to enter into contracts or agreements for the operation of a solid waste facility; (8) chapter 9 which deals with financing of solid waste management facilities; and (9) chapter 11 which sets forth reporting requirements. *See* IC 13–9.5–2 through 13–9.5–11.

cle 9.5 and does not render the definitions and regulations under Article 7, Environmental Management, inapplicable. Moreover, Medical Disposal has failed to show that its infectious waste "is disposed of at an incinerator permitted under the rules adopted by the solid waste management board to dispose of infectious waste" as required by IC 13–9.5–1–26.

 In addition, application of this rule of construction would frustrate the stated purpose of Article 7, as indicated *supra,* which is "... to preserve, protect, and enhance the quality of the environment so that, to the extent possible, future generations will be ensured clean air, clean water, and a healthful environment." *See* IND.CODE § 13–7–1–1(a) (1993). The permit requirement exists to protect the public from the inherent dangers of waste processing facilities through inspection by the IDEM and through correction of potential hazards. *National Salvage, supra,* at 559. A facility without a permit poses an imminent and substantial endangerment to the health and welfare of the people in the area. *Id.* This purpose, coupled with the fact the legislature has proposed to include infectious waste in the definition of solid waste, is indicative of the legislature's intent that infectious waste is subject to the regulations under Article 7 and that the exclusion of infectious waste in IC 13–9.5–1–26 is limited to that article.

Accordingly, we determine the trial court did not err in finding that by transferring infectious waste at the IMK Truckstop, Medical Disposal was transporting solid waste and operating a solid waste processing facility without the required permit in violation of Indiana law. Therefore, we conclude that the trial court's grant of summary judgment in favor of the IDEM was proper.

Affirmed.

GARRARD and RILEY, JJ., concur.