**INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, et al., Appellants–Defendants,**

v.

**MEDICAL DISPOSAL SERVICES, INC., Appellee–Plaintiff.**

No. 56A05–9805–CV–243.

Court of Appeals of Indiana.

Oct. 16, 1998.

Rehearing Denied Dec. 29, 1998.

Jeffrey A. Modisett, Attorney General, Jon B. Laramore, Deputy Attorney General, Indianapolis, for Appellants–Defendants.

Kenneth D. Reed, Abrahamson, Reed & Adley, Hammond, for Appellee–Plaintiff.

**OPINION**

BAILEY, Judge.

**Case Summary**

Appellant–Defendant Indiana Department of Environmental Management, et al. ("IDEM") appeals the summary judgment entered in favor of Appellee–Plaintiff Medical Disposal Services, Inc. ("MDSI") which prevents IDEM from imposing the penalties authorized by law for the violation of the statutory/regulatory scheme which prohibits

the operation of a solid waste transfer station without a permit.[1] We affirm.

### Issue

The dispositive issue may be restated as whether, in the exercise of our judicial authority to control the administrative process and temper an agency's power to assess penalties, we should prohibit IDEM from imposing a penalty against MDSI for the operation of its Hammond transfer station which 1) never posed a threat to the environment, and 2) is now expressly permitted by law.

### Facts

The largely undisputed facts, as found in 1994 by the Lake Superior Court in its order granting MDSI's request for a preliminary injunction restraining IDEM from taking any action to interrupt or interfere with the operation of MDSI's transfer station pending the outcome of its declaratory judgment action, reveal that, since 1989, MDSI had been engaged in the business of collecting and transporting medical waste generated by approximately 7000 health care providers in Northwest Indiana to a fully permitted and regulated incinerator facility in Michigan for disposal. (R. 188–89). In compliance with all pertinent Indiana Public Health Statutes and Regulations, the health care provider customers of MDSI would place medical waste in impermeable containers which were then sealed. (R. 189). The containers were identified and recorded on a written manifest for collection, transportation, and disposal. (R. 189, 191). MDSI would then collect the sealed, impermeable containers from the customer's facility in small, closed trucks. (R. 189). The small trucks would then be driven to MDSI's transfer facility located at a truck stop in Hammond, Indiana. (R. 189, 191); *See Medical Disposal Services, Inc. v. IDEM*, 669 N.E.2d 1054, 1056 (Ind.Ct.App. 1996) (the earlier appeal taken in the present case), *trans. denied.*

MDSI's transfer facility in Hammond was fully enclosed by an eight-foot fence and was not open to the general public. (R. 190). Persons entering or leaving the premises were subject to monitoring 24 hours per day. (R. 190). MDSI's facility had no exposed waste, no blowing material, no leachate, no odor, no vectors, and no putrescence exposed to the atmosphere. (R. 190).

At the transfer facility, the small trucks would back up to the open rear doors of larger, closed, semi-tractor trailer trucks. (R. 189, 191). The driver of the small truck would use a hand-cart to move the containers into the large truck, which was of equal height, exposing the sealed, impermeable containers to inclement weather, if any, for no more than two seconds. (R. 189, 191). MDSI employees involved in these duties wore protective clothing and had been trained in OSHA blood-borne pathogen standards. (R. 190). The employees would refuse to collect or transport containers in the event their integrity had become compromised. (R. 190).

In 1994, IDEM notified MDSI that the operation of its Hammond facility was illegal because it constituted the operation of a solid waste transfer station without a permit. *See MDSI*, 669 N.E.2d at 1056. MDSI disagreed and filed an action for declaratory judgment in which it obtained the temporary restraining order discussed above which prohibited IDEM from interfering with the Hammond transfer station pending the resolution of the litigation. *Id.* at 1056 n. 1.

The trial court ultimately decided in favor of IDEM, determining that the Hammond operation did constitute the operation of a solid waste transfer station without a permit in violation of the existing statutes and regulations. *Id.* at 1056. Thus, the trial court ordered MDSI to discontinue its transfer operation until it had obtained the required permits. (R. 232). MDSI complied with the trial court's order and closed down the Hammond facility. (R. 666). MDSI appealed the

---

1. In 1994, when the events underlying this litigation transpired, the statutes which prohibited and imposed penalties for the operation of a solid waste transfer station without a permit were found in Ind.Code § 13–7. *See Medical Disposal Services, Inc. v. IDEM,* 669 N.E.2d 1054, 1056 (Ind.Ct.App.1996) (the earlier appeal taken in this case), *trans. denied.* Title 13 was recodified in 1996. P.L. 1–1996 § 99. Now, the analogous statutory sections may be found in Ind.Code § 13–30.

trial court's decision, but we affirmed. *MDSI,* 669 N.E.2d at 1060.

After successfully defending the trial court's decision on appeal, IDEM requested that the civil penalties authorized by law for the illegal operation of the solid waste transfer station be enforced. (R. 649–50). IDEM asserted that MDSI had earned over $400,-000.00 in net income during the two-year period the preliminary injunction was in effect and that MDSI would not have been profitable but for the operation of its illegal transfer station. (R. 649–63). IDEM requested that MDSI be ordered to pay all of its net income for those two years as one component (among others) of an appropriate civil penalty. (R. 650). Additionally, IDEM had threatened to invoke civil penalties against MDSI of up to $25,000.00 per day. (R. 11); *See* IND.CODE §§ 13–30–4–1 (1996) (formerly IND.CODE § 13–7–13–1).

In 1997, the General Assembly amended the definition of "transfer station" to exclude a facility where:

(A) infectious waste ... is transferred directly between two (2) vehicles;

(B) infectious waste is packaged in compliance with [applicable regulations]; and

(C) packages of infectious waste are not opened at any time during the transfer.

P.L.128–1997 § 2; IND.CODE § 13–11–2–235.

After a change of venue to the present trial court, MDSI moved for summary judgment requesting that the trial court prohibit IDEM from imposing penalties during the term of the preliminary injunction. (R. 619). In granting MDSI's motion, the trial court found that penalties would not be imposed because 1) the law governing the legality of the Hammond transfer station was not "totally clear," and 2) a reasonable person could interpret the preliminary injunction "to the effect that there would be no fine levied for acts occurring while the Order was in effect."

(R. 679–80).[2] Accordingly, the trial court ruled that "IDEM is foreclosed from assessing any type of civil penalty during the period wherein the Preliminary Injunction was in effect." (R. 680).[3] This appeal ensued.

### Discussion and Decision

*Standard of Review*

■ As stated in *Stevenson v. Hamilton Mutual Insurance Company,* 672 N.E.2d 467 (Ind.Ct.App.1996), *trans. denied:*

In reviewing a motion for summary judgment, this court applies the same standard as the trial court. We must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. A trial court's grant of summary judgment is 'clothed with a presumption of validity,' and the appellant bears the burden of demonstrating that the trial court erred.

672 N.E.2d at 470–71 (citations omitted). The reviewing court may affirm the grant of summary judgment on any legal basis supported by the designated materials. *Wolfe v. Stork RMS Protecon, Inc.,* 683 N.E.2d 264, 267 (Ind.Ct.App.1997).

*Judicial Authority Over Administrative Process*

■ The judiciary has authority to control the administrative process and temper an

---

2. Although trial court findings entered in summary judgment proceedings aid appellate review, they are not binding upon this court. *Althaus v. Evansville Courier Co.,* 615 N.E.2d 441, 444 (Ind. Ct.App.1993).

3. Contrary to the trial court's apparent conclusion, the law would appear to be settled that the

trial court's entry of a preliminary injunction will not prevent a regulatory body from imposing penalties for the violation of rule or regulation during the period of such injunction. *Indiana High School Athletic Ass'n ("IHSAA") v. Carlberg,* 694 N.E.2d 222, 227, 239, 242–43 (Ind.1997).

agency's power to assess penalties. *See* LOUIS L. JAFFE, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 318–19 (1965). In *National Labor Relations Board ("NLRB") v. National Gas Co.*, 215 F.2d 160, 163 (8th Cir.1954), the NLRB assumed jurisdiction over a labor dispute and sought to obtain an order of enforcement from the court. *Id.* at 162. During the pendency of the action, new regulations were implemented which limited the scope of the NLRB's jurisdiction such that the National Gas labor dispute no longer would have come within the NLRB's jurisdiction. *Id.* The court declined to grant the NLRB's petition for enforcement holding that the NLRB's position was "untenable" because the effectuation of an enforcement order under these circumstances would constitute "arbitrary and capricious discrimination" against National Gas. *Id.* at 163; *contra NLRB v. Red Rock Co.*, 187 F.2d 76 (5th Cir.1951), *cert. denied*, 341 U.S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373.

### Penal Statutes and the Doctrine of Amelioration

It is axiomatic that a statute which imposes a penalty is a penal statute. *See Storrjohann v. State*, 651 N.E.2d 294 n. 4 (Ind.Ct.App.1995); *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 835 (Ind.Ct.App.1995) (statute which imposes a penalty upon employers for the failure to pay wages is a penal statute).

As noted earlier, the statutes involved in the present case authorize a civil penalty of up to $25,000.00 per day for the operation of a solid waste transfer station without a permit. Therefore, the statutes are penal in nature.

■ Under the doctrine of amelioration, when the penalty for the violation of a penal statute is decreased by an ameliorative amendment enacted after the commission of the offense but before sentence is imposed, the ameliorative amendment will be applied. *Rowold v. State*, 629 N.E.2d 1285, 1288 (Ind.

Ct.App.1994). Indiana's doctrine of amelioration is based upon Article I § 18 of the Indiana Constitution which provides that penal statutes are to be founded on the principles of reformation, and not of vindictive justice. *Vicory v. State*, 272 Ind. 683, 400 N.E.2d 1380, 1381 (1980). Where the legislature has determined that a former penalty was too severe and that a lighter punishment is the appropriate penalty for the proscribed act, then to enforce the more severe penalty would serve no purpose other than to satisfy a constitutionally impermissible desire for vindictive justice. *Id.* at 1381–82.

■ It is indisputable that the General Assembly's 1997 promulgation of IND.CODE § 13-11-2-235 legalized the very operation in which MDSI had been engaged. We have no hesitation in concluding that this distinctive statute was enacted specifically to remedy the plight of MDSI. *See Joe v. Lebow*, 670 N.E.2d 9, 17–18 (Ind.Ct.App.1996) (we may assume that the legislature's amendment of a statute has been made in response to the interpretation placed upon that statute by the appellate courts); *Alvers v. State*, 489 N.E.2d 83, 88 (Ind.Ct.App.1986) (when the legislature amends a statute, it is presumed that the legislature intended to change the law), *trans. denied.*

The premise upon which the doctrine of amelioration rests compels us to exercise our judicial authority over the administrative process and prohibit IDEM from imposing penalties against MDSI under the present circumstances.[4] MDSI's operation of the Hammond transfer station never posed a serious threat to the environment. After IDEM effectively shut MDSI down, our General Assembly enacted legislation which expressly legalized the precise process in which MDSI had been engaged; and thus divested IDEM of the authority to prohibit or penalize MDSI's operation of its Hammond transfer station in the future. Under these circum-

---

4. We do not hold that the imposition of a penalty in the present case would be an unconstitutional exercise of vindictive justice. *See Weatherford v. State*, 654 N.E.2d 899, 900–01 (Ind.Ct.App.1995) (where legislature employs a savings clause to preserve a former, more severe punishment and does not state that the former punishment was too severe, the imposition of the former penalty does not constitute vindictive justice). We hold only that the rationale behind the doctrine of amelioration has compelled us to exercise our judicial authority to prohibit IDEM from imposing a penalty against MDSI under the present circumstances.

stances, we conclude that IDEM should also be prohibited from imposing any type of penalty against MDSI for its past operation of the Hammond transfer facility.

As noted earlier, we may affirm the grant of summary judgment on any legal basis supported by the designated materials. *See Wolfe,* 683 N.E.2d at 267. Therefore, based on the above, we uphold the trial court's entry of summary judgment in favor of MDSI.

Affirmed.

BAKER and DARDEN, JJ., concur.