INDIANA DEPARTMENT OF ENVI-
RONMENTAL MANAGEMENT, et
al., Appellants (Defendants Below),

v.

MEDICAL DISPOSAL SERVICES,
INC., Appellee (Plaintiff
Below).

No. 56S05–9905–CV–298.

Supreme Court of Indiana.

June 9, 2000.

Karen Freeman–Wilson, Attorney Gen-
eral of Indiana, John B. Laramore, Deputy
Attorney General, Indianapolis, Indiana,
Attorneys for Appellant.

Kenneth D. Reed, Hammond, Indiana,
Attorney for Appellee.

SHEPARD, Chief Justice.

In 1994, Medical Disposal Services, Inc. (MDSI), sought declaratory judgment that its operations were not subject to the Indiana Department of Environmental Management's (IDEM) permit requirement for solid waste transfer stations. Though MDSI won a preliminary injunction prohibiting any IDEM enforcement action, it ultimately lost on the merits. It did persuade the trial court, however, that IDEM could not impose any sanction for violations that occurred while the injunction was in effect. We reverse.

## Relevant Facts and Procedural Posture

The relevant facts in this case are largely undisputed. They were set forth by the Court of Appeals in the previous appeal:

> The undisputed facts reveal that Medical Disposal is an Illinois corporation duly admitted to do business in Indiana. Since 1989, Medical Disposal has collected and transported medical waste from Indiana to a medical waste facility in Grand Rapids, Michigan where the waste is disposed of by incineration. Medical Disposal operates small delivery trucks which retrieve medical waste from numerous health care providers and health care facilities in northwest Indiana. These trucks then transport the contained waste to a central site, leased by Medical Disposal, located at the IMK Truckstop in Hammond, Indiana. There, the containers are removed from the smaller trucks and loaded into the larger tractor trailers which then haul the waste to the incinerator facility in Michigan.
>
> In March 1994, the IDEM notified Medical Disposal that an inspection of the IMK Truckstop revealed that by transferring medical waste, Medical Disposal was operating a solid waste transfer station without acquiring a solid waste processing permit in violation of Indiana law. The IDEM ordered Medi-

cal Disposal to cease the transfer of the medical waste until a valid permit was obtained.

> In May 1994, Medical Disposal filed a complaint for a declaratory judgment, alleging that it was not in violation of the Indiana Environmental Management Act or any State solid waste regulations as its transport of medical waste did not include the transfer of solid waste and thus, was not subject to the permit requirements.

*Medical Disposal Services, Inc. v. Indiana Dept. of Envtl. Management,* 669 N.E.2d 1054, 1056 (Ind.Ct.App.1996), *trans. denied.* Pending resolution of the lawsuit,[1] MDSI sought and obtained a temporary restraining order, and then a preliminary injunction, prohibiting IDEM from interfering with the operation of the facility. In its answer to the complaint, IDEM counterclaimed for civil penalties for MDSI's alleged violations.

The trial court ultimately granted summary judgment in favor of IDEM, determining that MDSI had illegally operated a disposal facility for which a permit was required. The court ordered MDSI to cease all operations at the IMK Truckstop within five days and remain closed until it obtained all the proper permits. MDSI complied with the order and closed the IMK facility. The court did not reach the issue of civil penalties.

On appeal, the Court of Appeals affirmed the summary judgment for IDEM, stating:

> [W]e determine that the trial court did not err in finding that by transferring infectious waste at the IMK Truckstop, Medical Disposal was transporting solid waste and operating a solid waste processing facility without the required permit in violation of Indiana law.

*Medical Disposal Services,* 669 N.E.2d at 1060. This Court denied transfer. *Medi-*

---

1. Whether a declaratory judgment action is an appropriate vehicle for raising such issues

was never addressed on appeal.

*cal Disposal Services, Inc. v. Indiana Dept. of Envtl. Management,* 683 N.E.2d 589 (Ind.1997).

On remand, the trial court set a hearing to address the issue of civil penalties. After a change of venue, MDSI moved for summary judgment, requesting that the trial court prohibit IDEM from imposing any penalties during the period of preliminary injunction. IDEM also moved for partial summary judgment, asking the court to determine as a matter of law that MDSI had earned over $400,000 in profit during the preliminary injunction period, and that those profits were the direct result of its illegal operations. IDEM asked the trial court to order MDSI to remit these allegedly ill-gotten gains as one component of an appropriate civil penalty. IDEM now asserts that it actually "did not ask for summary judgment on civil penalties, believing that additional factual matters had to be adduced at trial before penalties could be assessed." (Appellant's Br. at 3–4.)

The trial court granted MDSI's motion and denied IDEM's motion. As summarized by the Court of Appeals:

> [T]he trial court found that penalties would not be imposed because 1) the law governing the legality of the Hammond transfer station was not "totally clear," and 2) a reasonable person could interpret the preliminary injunction "to the effect that there would be no fine levied for acts occurring while the Order was in effect." (R. [at] 679–80). Accordingly, the trial court ruled that "IDEM is foreclosed from assessing any type of civil penalty during the period wherein the Preliminary Injunction was in effect." (R. [at] 680).

*Indiana Dept. of Envtl. Management v. Medical Disposal Services, Inc.,* 700 N.E.2d 500, 502 (Ind.Ct.App.1998) (footnote omitted). IDEM appealed, and the Court of Appeals affirmed. This appeal

ensued. We grant IDEM's petition to transfer.

## Summary Judgment Standard of Review

■ A grant of summary judgment requires that the evidence show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). On appeal from summary judgment, the reviewing appellate court faces the same issues that were before the trial court, and analyzes them in the same way. *Ambassador Fin. Services Inc. v. Ind. Nat'l Bank,* 605 N.E.2d 746 (Ind.1992). Although the nonmovant has the burden of demonstrating the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied its day in court. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664 (Ind.1997).

## Civil Penalties Not Barred

■ IDEM asserts that the trial court wrongly granted summary judgment for MDSI on remand because civil penalties are both authorized and appropriate in this instance. MDSI counters that summary judgment was correctly granted because the governing law was unclear and the penalty grossly excessive.

In the first phase of this case, the trial court and the Court of Appeals concluded that MDSI had violated the permit requirements for solid waste disposal facilities. *See Medical Disposal Services,* 669 N.E.2d at 1058–59. Accordingly, the issue of culpability has been decided against MDSI. The only remaining issue in this transaction is whether IDEM may impose civil fines for the period the preliminary injunction was in effect. We hold that it can.

■ The Indiana Code authorizes IDEM's commissioner to issue administrative orders imposing civil penalties.[2] The

---

**2.** *See* Ind.Code Ann. § 13–14–2–7, –30–3– 4(b)(2)(B)(ii), –30–3–11 (West 1998) (formerly

commissioner may also initiate a court action to recover civil penalties.[3] For violations such as MDSI's, the Code allows the commissioner to assess civil penalties of up to twenty-five thousand dollars per day of violation.[4] IDEM's power, of course, is not without check. Subject to the applicable standards of administrative review, "[t]he judiciary has authority to control the administrative process and temper an agency's power to assess penalties." *Indiana Dept. of Envtl. Management*, 700 N.E.2d at 502–03 (citing Louis J. Jaffe, *Judicial Control of Administrative Action*, 318–19 (1965)). Furthermore, the Court of Appeals correctly pointed out the now-settled doctrine that a trial court's entry of a preliminary injunction will not prevent a regulatory body from imposing penalties for the willful violation of a rule or regulation during the period of the injunction. *Id.* at 502 n. 3 (citing *Indiana High School Athletic Ass'n v. Carlberg*, 694 N.E.2d 222, 227, 242–43 (Ind.1997)).[5]

If the Indiana Code authorizes IDEM to impose penalties, and the preliminary injunction does not insulate MDSI from penalties, then how could the trial court and the Court of Appeals both rule in favor of MDSI?

In ruling that IDEM would be prohibited from imposing civil penalties in the present case, the trial court relied in part on the notion that the law governing the legality of the Hammond transfer station was not "totally clear." (R. at 678–79.) To demonstrate that point, the court noted that the Court of Appeals had to resort to rules of statutory construction to interpret the statute's language.[6]

MDSI also devotes several pages in its brief pointing out the vagueness that existed within the law, and the uncertainty regarding its applicability to MDSI's operations.[7] (Appellee's Br. at 15–23.) Both the trial court and Court of Appeals have already held, however, that the law was clear enough to inform MDSI that it needed a permit, and that failure to acquire such a permit was a violation of state law. *Medical Disposal Services*, 669 N.E.2d at

---

Ind.Code § 13–7–5–8, –11–2, –11–5). Title 13 of the Indiana Code was recodified in 1996. Because the analysis would not change, we cite to the statutes currently in effect throughout this opinion, with references to the citations in place when the action was originally filed.

3. *See* Ind.Code Ann. § 13–14–2–6, –30–4–1(b) (West 1998) (formerly Ind.Code § 13–7–5–7, –7–13–1(a)).

4. *See* Ind.Code Ann. § 13–30–4–1(a) (West 1998) (formerly Ind.Code § 13–7–13–1(a)).

5. Our opinion on this topic is actually *Indiana High School Athletic Ass'n v. Reyes*, 694 N.E.2d 249 (Ind.1997).

6. The court stated:
   That the statutes in force at all times relevant herein regarding "infectious waste" and "solid waste" were not totally clear as to whether or not "infectious waste" came within the purview of the statute governing "solid waste" as evidenced by the fact that the Indiana Court of Appeals was required to apply the rules of statutory construction and interpret these statutes for the benefit of the people of Indiana.
   (R. at 678–79.)

7. MDSI argued:
   When the original Summary Judgment was argued, MDSI pointed out to Judge Smart that IDEM was in the process of amending its Regulation so as to specifically name "infectious" waste as a "solid" waste. MDSI suggested that this meant that infectious waste had never been included before within the definition of solid waste. IDEM disagreed, and successfully maintained that its effort at amending its Regulation was purely for the purposes of "clarification", and not a change in meaning. Judge Smart recognized this "clarification" purpose in his original Summary Judgment, and the Court of Appeals concurred in its decision of August 26, 1996. MDSI respectfully submits that it was a close question, in any event, and further that if one is to be subjected to heavy-duty fines and penalties for violating a Statute or a Regulation, then the Statute or Regulation should be crystal clear, even to a lay-person, and not ambiguous, and certainly not in need of "clarification."
   (Appellee's Br. at 13 (emphasis omitted).)

1060 ("Medical Disposal was transporting solid waste and operating a solid waste processing facility without the required permit in violation of Indiana law.... [T]he trial court's grant of summary judgment in favor of IDEM was proper.").

Slightly recast, MDSI's argument becomes: the court found the law clear enough to hold us guilty, but should find it too vague to impose any penalty upon us. We think IDEM is correct in its characterization that MDSI is "still trying to fight the last war in its effort to convince this Court that the law was so vague that it could not serve as the basis for civil penalties." (Appellant's Reply Br. at 4–5.) MDSI lost that war below, and we decline to restage it here.

■ The trial court and Court of Appeals also relied heavily on the fact that the Indiana General Assembly has since amended the Code to exclude specifically the type of facility which had been run by MDSI.[8] The legislature's subsequent legalization of MDSI's activities, however, did not relieve MDSI of the obligation it faced at the time. As a general rule, the law in place at the time an action is commenced governs. "Unless a contrary intention is expressed, statutes are treated as intended to operate prospectively, and not retro-

spectively." *Chadwick v. City of Crawfordsville*, 216 Ind. 399, 413–14, 24 N.E.2d 937, 944 (1940).

## What Penalty Is Proper?

■ Each of the arguments offered by MDSI actually speak to an issue different from IDEM's power to assess civil penalties. MDSI asserts that the governing laws were in a state of flux which, by IDEM's own admission, necessitated "clarification." Moreover, argues MDSI, the legislature later legalized these exact activities. MDSI also points to its exemplary behavior at all stages of these proceedings, including the fact that "[t]he minute Judge Smart entered his decision deciding that infectious waste was included in the definition of solid waste, MDSI halted operations in Hammond." (Appellee's Br. at 13–14.)[9] According to MDSI, "[t]hese aren't the kind of people who should be billy-clubbed with a monstrous assessment of civil penalties just because they disagreed with mighty IDEM."[10] (*Id.* at 14.) Finally, MDSI maintains that the civil penalties sought by IDEM here are so outlandish as to violate the United States and Indiana Constitutions' prohibitions against excessive fines. *See* U.S. Const. amend. VIII; Ind. Const. art. I, § 16.

8. In 1997, the General Assembly amended the definition of "transfer station" to exclude a facility where:

(A) infectious waste ... is transferred directly between two (2) vehicles;
(B) infectious waste is packaged in compliance with [applicable regulations]; and
(C) packages of infectious waste are not opened at any time during the transfer.
Pub.L. No. 128–1997 § 2; Ind.Code Ann. § 13–11–2–235 (West 1998).

In prohibiting IDEM from assessing any penalties against MDSI, the trial court noted: [T]he [previously mentioned ambiguity in the law] is further evidenced by the recent amendment to the statute defining solid waste and the Court now takes judicial notice of said amendment.
(R. at 679.) The Court of Appeals went even further in its reliance on the new statute, likening it to a change in criminal penal statutes justifying the use of the doctrine of ame-

lioration. *Indiana Dept. of Envtl. Management*, 700 N.E.2d at 503–04. By virtue of our grant of transfer, that opinion is vacated. Ind. Appellate Rule 11(B)(3).

9. With regard to MDSI's compliance with the trial court's order, as evidence of its good faith at all stages of the proceedings, (Appellee's Br. at 12), we observe that MDSI did not have the option not to comply. Compliance with a cease and desist order entitles it to only the most modest mitigation.

10. This sort of hyperbolic and accusatory language characterize MDSI's briefs. (*See, e.g.,* Appellee's Br. in Opp'n to Trans. at 1, 2, 7, 8, 9, 10.) For its inappropriate tone and lack of respect for the opposing party, we strike MDSI's Brief in Opposition to Transfer. *See Shirk v. Hupp*, 167 Ind. 509, 79 N.E. 490 (1906) ("For discourteous and unprofessional language in a brief ..., the brief may be stricken from the files....").

None of these arguments abrogate IDEM's statutory power to assess civil penalties against violators, but might well be properly considered in determining an appropriate penalty. IDEM's "clarification" of the law and the General Assembly's subsequent legalization of the activity might be considered mitigating in determining the amount MDSI must pay, but do not mean that MDSI may not be fined at all. Whether the actual fines imposed by IDEM are appropriate is a factual matter that must be addressed at the trial court. As IDEM itself points out:

> [O]n remand, the amount of civil penalties is a matter for the trial judge's discretion. Many of the factors Medical Disposal raises in its brief, including its asserted good faith, could be considered by the trial court in a discretionary determination of the proper penalty. The trial court might also give weight to Medical Disposal's argument that lenity is appropriate where new legal ground is being explored, *Brief of Appellee* at 17–21. But that doctrine does not, by itself, preclude penalties altogether in this case.

(Appellant's Reply Br. at 5.) The remainder of this action must be spent figuring out the appropriate penalty, at which time MDSI's arguments about being "billy-clubbed" for "minor violations" when in fact "Medical Disposal at all times acted in absolute good faith," (Appellee's Br. at 14, 25), can be heard in full. The trial court can also hear full argument on whether IDEM may use displacement of profits or "leveling the playing field among competitors" as reasons for imposing the maximum penalty allowed. The court can also weigh the parties' evidence on the seriousness of the environmental threat posed by the IMK facility.[11] The trial court is the proper venue for resolution of these factual matters.

The stated purpose of the Environmental Management Act is "to preserve, pro-

tect, and enhance the quality of the environment so that, to the extent possible, future generations will be ensured clean air, clean water, and a healthful environment." *See* Ind.Code Ann. § 13–12–3–1(3) (West 1998) (formerly Ind.Code § 13–7–1–1–(a)). The penalty assessed on remand should reflect those principles and the relative gravity of the infraction.

### Conclusion

We reverse the summary judgment for MDSI, and remand to the trial court for proceedings on the amount of the penalty to be assessed.

DICKSON, SULLIVAN, RUCKER, and BOEHM, JJ., concur.

---

11. The parties offer conflicting accounts of infectious waste strewn upon the ground, and accessibility of the site to the general public. (Appellant's Br. at 8; Appellee's Br. at 9.)